Anne L. Weismann
D.C. Bar No. 298190
Melanie Sloan
D.C. Bar No. 434584
Citizens for Responsibility
and Ethics in Washington
1400 Eye Street, N.W.
Suite 450
Washington, D.C.  20005
202-408-5565

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

CITIZENS FOR RESPONSIBILITY AND    :
ETHICS IN WASHINGTON               :
1400 Eye Street, N.W., Suite 450,  :
Washington, D.C.  20005            :
                                   :
        Plaintiff,                :
                                   :
    v.                         :    Civil Action No.
                                   :
U.S. DEPARTMENT OF HOMELAND        :
SECURITY                           :
Washington, D.C.  20528            :
                                   :
ALLEN WEINSTEIN, in his official   :
capacity as Archivist of the United States  :
8610 Adelphi Road                  :
College Park, Maryland 20740       :
                                   :
        Defendants.               :
_____:

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

1.  This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §552, as

amended, agency FOIA regulations, and the Administrative Procedure Act ("APA"), challenging

the failure of the United States Secret Service ("Secret Service"), a component of the United

States Department of Homeland Security ("DHS"), to fulfill the request of Plaintiff for

documents relating to any visits that specified individuals made to the White House or the

residence of the vice president between January 1, 2001, and the present.  This action is also

brought under the Federal Records Act ("FRA"), 44 U.S.C. §§2101 et seq., 2901 et seq., 3010 et

seq., and 3301 et seq., which includes the Disposal of Records Act, 44 U.S.C. §§3301-3314, and

the Administrative Procedure Act ("APA"), 5 U.S.C. §706, challenging the policy of the Secret

Service to erase federal records, including Worker and Visitor Entry System ("WAVES")

records, once it has transferred the information on those records to the White House, and

challenging the failure of the Archivist to take enforcement action to prevent the DHS from

unlawfully destroying agency records.

2.  This case seeks declaratory relief that DHS is in violation of the FOIA for failing to

fulfill Plaintiff's request for records and injunctive relief that DHS immediately and fully comply

with Plaintiff's request under the FOIA.  Plaintiff also seeks declaratory relief that DHS's

record- keeping guidelines and directives are arbitrary, capricious, and contrary to the FRA

because they fail to ensure preservation of all WAVES and other visitor records.  Plaintiff seeks

declaratory relief that the Archivist's failure to seek the initiation of an enforcement action by

the Attorney General is arbitrary, capricious, and in violation of his responsibilities under the

FRA.  In addition, Plaintiff seeks injunctive relief requiring the Archivist to fulfill his mandatory

statutory duty to notify Congress and ask the Attorney General to initiate legal action to ensure

that DHS complies fully with its obligations under the FRA and to ensure the recovery of copies

of WAVES and any other visitor records that the Secret Service transferred to the White House

after deleting the agency's copies.

## JURISDICTION AND VENUE

3.  This Court has both subject matter jurisdiction over this action and personal jurisdiction over DHS pursuant to 5 U.S.C. §552(a)(4)(B) and 5 U.S.C. §702, which gives the Court jurisdiction over agency actions where an aggrieved party has suffered wrong within the meaning of a "relevant statute," here the FRA, and over the Archivist pursuant to 5 U.S.C. §702. This Court also has jurisdiction over this action pursuant to 28 U.S.C. §1331.  Venue lies in this district under 5 U.S.C. §552(a)(4)(B) and 5 U.S.C. §703.

## PARTIES

4.  Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") is a non-profit corporation, organized under section 501(c)(3) of the Internal Revenue code.  CREW is committed to protecting the right of citizens to be informed about the activities of government officials and to ensuring the integrity of government officials.  CREW is dedicated to empowering citizens to have an influential voice in government decisions and in the governmental decision-making process.  To advance its mission, CREW uses a combination of research, litigation, and advocacy.  As part of its research, CREW uses government records made available to it under the FOIA.

5.  CREW has invested considerable organizational resources in pushing the U.S. government to take ethics issues seriously.  CREW monitors closely the laws and rules applicable to government agencies.

6.  CREW has sought records of White House visits from the Secret Service in the past, and intends to seek similar records in the future, given their usefulness in identifying and helping to explain the influences to which a given administration may be subject.

7.  CREW is harmed by DHS's failure to comply with the FOIA, because that failure harms CREW's ability to provide full, accurate, and current information to the public.  5 U.S.C. §552(a)(6)(C).

8.  CREW is also harmed by DHS's failure to adopt and comply with record-keeping guidelines and directives mandated by the FRA, because that failure has denied CREW access to WAVES records that are a critical part of the evidentiary record concerning the influences to which the Bush administration is subject, information that is "in the public interest."  44 U.S.C. §3303(a)(c)(3); *see also* <u>American Friends Service Comm. v. Webster</u>, 720 F.2d 29 (D.C. Cir. 1983).

9.  CREW is harmed by the Archivist's failure to fulfill his mandatory statutory duty to seek redress for DHS's unlawful destruction of agency records because that failure has placed years of WAVES records – and possibly other visitor records – beyond CREW's reach under the FOIA and deprived CREW and the public of important historical evidence.

10.  CREW is also harmed by the failure of the Archivist to afford CREW notice and the opportunity to comment on any proposal by DHS to destroy visitor records, because it deprived CREW of the opportunity to try to demonstrate for the Archivist that such records should not be destroyed because they have sufficient administrative, legal, research or other value to warrant their continued preservation.

11.  Defendant DHS is an agency within the meaning of 5 U.S.C. §552(f) and 5 U.S.C. §702.  DHS and its component, the Secret Service, have possession and control of the requested records and are responsible for fulfilling Plaintiff's FOIA request.  DHS and its component the Secret Service have adopted a record-keeping policy that has resulted in the destruction of

WAVES records and possibly other federal records and are responsible for the harm done to

CREW's ability to obtain and make public those records.  *See* 44 U.S.C. §§3301, et seq.; 5

U.S.C. §702.

12.  Defendant Allen Weinstein is the Archivist of the United States, and is sued solely in

his official capacity.  As Archivist, Mr. Weinstein is responsible for the supervision and

direction of the National Archives and Records Administration ("NARA"), 44 U.S.C. §2102.

The Archivist's duties include authorizing the disposal of records of federal agencies after a

specified period of time through the approval of schedules submitted to him by individual

agencies, or by promulgating General Records Schedules.  In addition, the FRA mandates that

upon learning of the unlawful destruction of agency records, the Archivist must notify the head

of the agency and assist the agency head in initiating an action through the Attorney General for

redress.  44 U.S.C. §2905(a).

### STATUTORY FRAMEWORK

#### The Freedom of Information Act

13.  The FOIA, 5 U.S.C. §552, requires agencies of the federal government to release

requested records to the public unless one or more specific statutory exemptions apply.

14.  An agency must respond to a party making a FOIA request within 20 working days,

notifying that party of at least the agency's determination whether or not to fulfill the request,

and of the requester's right to appeal the agency's determination to the agency head.  5 U.S.C.

§552(a)(6)(A)(I).

15.  An agency must respond to a FOIA appeal within 20 working days, notifying the

appealing party of the agency's determination to either release the withheld records or uphold the

denial.  5 U.S.C. §552(a)(6)(A)(ii).

16.  In "unusual circumstances," an agency may delay its response to a FOIA request or appeal, but must provide notice and must also provide "the date on which a determination is expected to be dispatched."  5 U.S.C. §552(a)(6)(B).

17.  This Court has jurisdiction, upon receipt of a complaint, "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. §552(a)(4)(B).

18.  The FOIA provides a mechanism for disciplinary action against agency officials who have acted inappropriately in withholding records.  Specifically, when requiring the release of improperly withheld records, if the Court makes a written finding that "the circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously," a disciplinary investigation is triggered.  5 U.S.C. §552(a)(4)(F).

19.  The FOIA also requires each agency to promulgate regulations specifying a fee schedule for the processing of FOIA requests and establishing procedures and guidelines for the waiver or reduction of fees.  5 U.S.C. §552(a)(4)(A).  Defendant DHS's fee waiver regulations are found at 6 CFR §5.11.

20.  The FOIA also provides that documents should be produced at no charge to the requester or at a reduced charge if "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."  5 U.S.C. §552(a)(4)(A)(iii).

21.  A district court reviews any appeal of a fee waiver determination de novo.  The

court's review of the matter is limited to the record before the agency.  5 U.S.C.
§552(a)(4)(A)(vii).

### The Federal Records Act

22.  The FRA is a collection of statutes that governs the creation, management and
disposal of federal records.  *See generally* 44 U.S.C. §§2101 et seq., 2901 et seq., 3010 et seq.,
and 3301 et seq.  Among other things, the FRA ensures "[a]ccurate and complete documentation
of the policies and transactions of the Federal Government," as well as "judicious preservation
and disposal of records."  44 U.S.C. §2902.

23.  To fulfill this purpose, the FRA requires the head of each agency to "make and
preserve records containing adequate and proper documentation of the organization, functions,
policies, decisions, procedures, and essential transactions of the agency."  Id. at §3101.  Under
the statute, each agency must also "establish and maintain an active, continuing program for the
economical and efficient management of the records of the agency," id. at §3102, and must
"establish safeguards against the removal or loss of records" the agency head determines are
necessary and required by regulations of the Archivist.  Id. at §3105.

24.  The FRA also prescribes the exclusive mechanism for the disposal of federal records,
which it defines to include:

> all books, papers, maps, photographs, machine readable
> materials, regardless of physical form or characteristics,
> made or received by an agency of the United States
> Government under Federal law or in connection with
> the transaction of public business and preserved or
> appropriate for preservation by that agency . . as evidence
> of the organization, functions, policies, decisions, procedures
> operations, or other activities of the Government or because
> of the informational value of data in them.

44 U.S.C. §3301.  No records may be "alienated or destroyed" except pursuant to the disposal provisions of the FRA.  Id. at §3314.

25.  The Archivist administers the provisions of the FRA and may authorize an agency to dispose of records that the agency no longer needs and that do not have "sufficient administrative, legal, research, or other value to warrant their continued preservation by the Government."  44 U.S.C. §3303a(a).  Only if the Archivist determines that agency records do not have administrative, legal, research, or other value can the Archivist authorize their disposal.  Id. at §§3303a(a), (d), and (e).

26.  An agency wishing to dispose of records must first submit to the Archivist either lists of records the agency head determines "are not needed by it in the transaction of its current business," 44 U.S.C. §3303a(2), or "schedules proposing the disposal after the lapse of specified periods of time of records of a specified form or character" that the agency head determines will not have "sufficient administrative, legal, research, or other value to warrant their further preservation by the Government."  Id. at §3303a(3).  Upon receipt of such a request, the Archivist must issue a notice requesting public comment on the agency's proposal and the Archivist's staff must conduct its own assessment of the value of the records the agency is proposing to destroy.  Id. at §3303a(a).  The Archivist is free to accept or reject an agency's proposal.  Id.

27.  If the Archivist learns of "any actual, impending, or threatened unlawful removal . . . or destruction of records in the custody of [an] agency," the Archivist is required to notify the head of the agency and assist the agency head "in initiating action through the Attorney General for the recovery of records wrongfully removed and for other redress provided by law."  44

U.S.C. §2905(a). If the agency head does not initiate such action, the Archivist "shall request

the Attorney General to initiate such action, and shall notify the Congress when such a request

has been made." Id.

### FACTS GIVING RISE TO PLAINTIFF'S CLAIMS FOR RELIEF

28. On October 4, 2006, Plaintiff sent a FOIA request to DHS seeking records,

regardless of format and including electronic records and information, relating to any visit that

any of the following individuals made to the White House or the residence of the vice president

from January 1, 2001, to the present: James Dobson, Gary L. Bauer, Wendy Wright, Louis P.

Sheldon, Andrea Lafferty, Paul Weyrich, Tony Perkins, Donald Wildmon, and Jerry Falwell.

Letter from Anne L. Weismann to U.S. Secret Service, Freedom of Information and Privacy Acts

Branch, October 4, 2006 (attached as Exhibit A).

29. CREW also sought a waiver of fees associated with processing its request given that

the request concerns the operations of the federal government, the disclosures will likely

contribute to a better understanding of relevant government procedures, and the request is

primarily and fundamentally for non-commercial purposes. *See* Exhibit A. Specifically, the

requested records are likely to shed light on the influence that conservative Christian leaders

have, or attempt to have, on the President in the exercise of his authority. Id.

30. To date, CREW has received no response to this request.

31. Despite repeated phone calls to the Secret Service FOIA office by CREW's counsel

to ascertain the status of CREW's request, including specifically when it was received by the

Secret Service, the Secret Service has refused to disclose any information about the request.

Secret Service FOIA personnel have advised CREW's counsel that they have been instructed

specifically not to tell CREW anything about its request, including any information about the status of the request.

32.  The statutory time for the Secret Service to respond to Plaintiff's October 4, 2006 FOIA request has run out and Plaintiff has constructively exhausted its administrative remedies with respect to DHS's processing of CREW's FOIA request.  5 U.S.C. §552(a)(6)(C); Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 65 (D.C. Cir. 1990).

33.  On May 16, 2006, the Secret Service filed a motion to dismiss for lack of subject matter jurisdiction in Judicial Watch v. U.S. Secret Service, (D.D.C. Civil No. 06-310 (JGP)), another FOIA lawsuit challenging the failure of the Secret Service to produce records in response to plaintiff Judicial Watch's request for all records that reflect the entries and exits of Jack Abramoff to and from the White House.  As part of its motion, the Secret Service submitted the declaration of Kathy J. Lyerly ("Lyerly Decl."), the Special Agent in Charge of the Liaison Division and the Freedom of Information and Privacy Acts Office for the Secret Service (attached as Exhibit B).

34.  Ms. Lyerly attested to the "longstanding practice of the Secret Service to transfer WAVES records on CD-ROM to the White House every 30 to 60 days."  Lyerly Decl., ¶10.  Ms. Lyerly did not explain what she means by "longstanding practice," but it is CREW's understanding that this practice postdates January 21, 2001, when the Bush administration came to power.

35.  Ms. Lyerly also stated that "once the Secret Service transferred the WAVES records, the Secret Service ensured that those records were erased from its computer system."  Id. According to Ms. Lyerly, beginning in October 2004, "at the request of the National Archives

and Records Administration, the Secret Service began temporarily retaining its own copy of the WAVES records that it transferred to the White House.  As such, the Secret Service has in its possession WAVES records dating back only to October 2004."  Id., ¶11.

36.  On May 17, 2006, the Secret Service entered into a Memorandum of Understanding ("MOU") with the White House Office of Records Management that purports to "govern the status and handling of records generated through the White House Access Control System." MOU, ¶1 (attached as Exhibit C).  The MOU confirms that as of October 2004, and at the request of NARA, the Secret Service began once again to retain WAVES records and will maintain this practice "until a legal determination was made confirming the propriety of handling WHACS Records as Presidential Records."  Id., ¶16a.

37.  With the exception of some WAVES records on Secret Service hard drives that, contrary to the stated policy of the Secret Service, were not erased, the Secret Service no longer possesses WAVES records requested by CREW in its FOIA request of October 4, 2006, because the Secret Service destroyed those records once it sent copies to the White House.

## PLAINTIFF'S CLAIMS FOR RELIEF

## CLAIM ONE

### (Failure to Produce Records Under the FOIA)
### (Against Defendant DHS)

38.  Plaintiff realleges and incorporates by reference all preceding paragraphs.

39.  Plaintiff properly asked for records within the custody and control of DHS.

40.  Plaintiff is entitled by law to access to the records requested under the FOIA, unless DHS makes an explicit and justified statutory exemption claim.

41.  Therefore, DHS violated FOIA's mandate to release agency records to the public by

11

failing to release the records as Plaintiff specifically requested.  5 U.S.C. §§552(a)(3)(A), 552(a)(4)(B).

## CLAIM TWO

### (Failure to Respond Under the FOIA)
### (Against Defendant DHS)

42.  Plaintiff realleges and incorporates by reference all preceding paragraphs.

43.  To date, Plaintiff has not received a response from DHS, and DHS has exceeded the 20-working-day statutory time limit for such a response.  5 U.S.C. §552(a)(6)(A)(I).

44.  Therefore, DHS has violated the FOIA's mandate to respond to Plaintiff's FOIA request within the statutory time period.

## CLAIM THREE

### (Policy to Destroy Records Subject to the FRA)
### (Against Defendant DHS)

45.  Plaintiff realleges and incorporates by reference all preceding paragraphs.

46.  The WAVES and other visitor records that the Secret Service creates and maintains are records within the meaning of the Federal Records Act, 44 U.S.C. §3314.  Accordingly, any agency policy that permits or authorizes disposal of these records must conform to the requirements of the FRA.

47.  The policy of the Secret Service and the DHS to erase from its computers all WAVES records once the information in those records has been transferred to the White House is arbitrary, capricious, and contrary to law, because it permits the disposal of records that have administrative, legal, research or other value, and because it permits the disposal of records that have not been subject to a disposition schedule that has been subject to notice and public

12

comment and approved by the Archivist.  Id. §§3303(a), (d), and (e).

48.  As a result of DHS's unlawful policy in violation of the FRA, Plaintiff was denied a right of access to information in the public interest, including important historical evidence concerning the influences to which the Bush administration has been subject.

49.  As a result of DHS's unlawful policy, Plaintiff was denied its right to notice and the opportunity to comment on the proposed destruction of agency records.

## CLAIM FOUR

**(Refusal to Take Enforcement Action)**
**(Against Defendant Allen Weinstein)**

50. Plaintiff realleges and incorporates by reference all preceding paragraphs.

51.  Under the Federal Records Act, the Archivist has a mandatory duty to assist the head of an agency, after notice to that head, in initiating an action through the Attorney General to prevent the actual, threatened or impending removal or destruction of records in the agency's custody.  44 U.S.C. §2905(a).  If the agency head fails to act, the Archivist is required to directly request the Attorney General to initiate an enforcement action and to notify Congress upon such a request.  Id.

52.  The Archivist has violated his mandatory, non-discretionary duty at least since 2004, when he was on notice that the Secret Service had a stated policy, now memorialized in an MOU executed in May 2006, of destroying WAVES and other visitor records after transferring copies to the White House in violation of the FRA, 44 U.S.C. §2905(a).

53.  Plaintiff and the public are harmed by the Archivist's failure to seek the initiation of an enforcement action through the Attorney General, as this failure threatens to keep from public access important historical documents with administrative, legal, research or other value.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Declare that DHS has violated the Freedom of Information Act by failing to lawfully satisfy Plaintiff's FOIA request of October 4, 2006;

(2) Order DHS to respond to Plaintiff's FOIA request immediately;

(3) Declare that DHS's policy of destroying WAVES and other visitor records is arbitrary, capricious, and contrary to law;

(4) Declare that the Archivist has breached his statutory duty to take enforcement action to prevent DHS from destroying records in contravention of the FRA and to recover records that DHS transferred to the White House;

(5) Order the Archivist to fulfill his mandatory statutory duty to ask the Attorney General to initiate legal action to ensure that DHS complies fully with its obligations under the FRA with corresponding notice to Congress;

(6) Award Plaintiff reasonable attorney fees and litigation costs in this action, pursuant to 5 U.S.C. §552(a)(4)(E); and

(6) Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

_____

Anne L. Weismann
(D.C. Bar No. 298190)
Melanie Sloan
(D.C. Bar No. 434584)
Citizens for Responsibility and Ethics
  in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20005
Phone: (20) 408-5565

14

Fax: (202) 588-5020

Attorneys for Plaintiff

November 9, 2006

**EXHIBIT A**



October 4, 2006

United States Secret Service
Freedom of Information and Privacy Acts Branch
245 Murray Drive
Building 410
Washington, D.C.  20223

### Re: Freedom of Information Act Request

Dear Sir/Madam:

Citizens for Ethics and Responsibility in Washington ("CREW") makes this request for records, regardless of format, medium, or physical characteristics, and including electronic records and information, pursuant to the Freedom of Information Act ("FOIA") and U.S. Department of Homeland Security ("DHS") regulations, 6 CFR part 5.

This request is for all records relating to any visit that any and all of the following individuals made to the White House or the residence of the Vice President from January 1, 2001, to the present.  As used herein, the term "White House" includes, but is not limited to, any office within the Executive Office of the President, the residence of the President, the Old and New Executive Office Buildings, and any other office or space on the grounds of the White House.  Specifically, we seek any record of visits to the White House or the Vice President's residence by the following individuals:

> James Dobson
> Gary L. Bauer
> Wendy Wright
> Louis P. Sheldon
> Andrea Lafferty
> Paul Weyrich
> Tony Perkins
> Donald Wildmon
> Jerry Falwell

We seek records of any and all kind, including electronic records, audiotapes, videotapes, photographs, and computer print-outs.  Our request includes any telephone messages, voice mail messages, and daily agenda and calendars.

If it is your position that any portion of the requested records is exempt from disclosure, CREW requests that you provide it with an index of those documents, as required under Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1972).  As you are aware, a Vaughn index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA." Founding Church of Scientology v. Bell, 603

F.2d 945, 959 (D.C. Cir. 1979). Moreover, the <u>Vaughn</u> index must "describe each document or portion thereof withheld, and for each withholding it must discuss the consequences of supplying the sought-after information." <u>King v. U.S. Dep't of Justice</u>, 830 F.2d 210, 223-24 (D.C. Cir. 1987).

In the event that some portions of the requested records are properly exempt *from disclosure, please disclose any reasonably segregable, non-exempt portions of the* requested records. *See* 5 U.S.C. §552(b). If it is your position that a document contains non-exempt segments and that those non-exempt segments are so dispersed throughout the documents as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed through the document. <u>Mead Data Central v. U.S. Dep't of the Air Force</u>, 455 F.2d 242, 261 (D.C. Cir. 1977). Claims of non-segregability must be made with the same detail as required for claims of exemptions in a <u>Vaughn</u> index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

## **<u>Fee Waiver Request</u>**

In accordance with 5 U.S.C. §552(a)(4)(A)(iii), CREW requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government and the disclosures will likely contribute to a better understanding of relevant government procedures by CREW and the general public in a significant way. Moreover, the request is primarily and fundamentally for non-commercial purposes, pursuant to 5 U.S.C. §552(a)(4)(A)(iii). *See, e.g.*, <u>McClellan Ecological v. Carlucci</u>, 835 F.2d 1282, 1285 (9th Cir. 1987). Specifically, the requested records are likely to contribute to the public's understanding of the influence that *conservative Christian leaders have, or attempt to have, on the President in the exercise* of his authority.

CREW is a non-profit corporation, organized under section 501(c)(3) of the *Internal Revenue code. CREW is committed to protecting the citizens' right to be aware* of the activities of government officials and to ensuring the integrity of those officials. CREW is dedicated to empowering citizens to have an influential voice in government decisions and in the government decision-making process. CREW uses a combination of research, litigation, and advocacy to advance its mission. The release of information garnered through this request is not in CREW's financial interest. CREW will analyze the information responsive to this request and intends to share its analysis with the public, either through memoranda, reports, or press releases. CREW has an established record of carrying out these types of activities, as evidenced through its website, www.citizensforethics.org. Currently, the CREW website contains links to thousands of pages of documents acquired from multiple FOIA requests. See http://citizensforethics.org/activities/foia.php. Visitors to CREW's website can peruse the FOIA request letters, the responses from government agencies, and a growing number of documents responding to FOIA requests. CREW's virtual reading room provides around-the-clock access to anyone interested in learning about the government activities that were the focus of CREW's FOIA requests. The CREW website also includes documents relating to CREW's FOIA litigation, Internal Revenue Service complaints, and Federal Election Commission complaints.

Under these circumstances, CREW satisfies fully the criteria for a fee waiver.

If you have any questions about this request, or foresee any problems in releasing fully the requested records on an expedited basis, please call Anne Weismann at (202) 408-5565. Also, if CREW's request for a fee waiver is not granted in full, please contact our office immediately upon making such a determination. Please send the requested documents to Anne Weismann, Citizens for Responsibility and Ethics in Washington, 1400 Eye Street, N.W., Suite 450, Washington, D.C. 20005.

Sincerely,

ANNE L. WEISMANN
Chief Counsel
Citizens for Responsibility and Ethics
  in Washington

**<u>EXHIBIT B</u>**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JUDICIAL WATCH,  ⟩<br><br>Plaintiff,  ⟩<br><br>v.  ⟩<br><br>UNITED STATES SECRET SERVICE,  ⟩<br><br>Defendant.  ⟩ | Civil Action No. 06-310 (JGP) |

## DECLARATION OF KATHY J. LYERLY
## SPECIAL AGENT IN CHARGE, LIAISON DIVISION AND
## FREEDOM OF INFORMATION AND PRIVACY ACTS OFFICER,
## UNITED STATES SECRET SERVICE

I, Kathy J. Lyerly, hereby make the following declaration:

1.    I am the Special Agent in Charge of the Liaison Division and the Freedom of

Information and Privacy Acts (FOI/PA) Officer for the United States Secret Service (hereinafter

Secret Service), which is a component of the Department of Homeland Security (DHS). I have

been the Secret Service FOI/PA Officer since December 28, 2003, and have been employed with

the Secret Service as a Special Agent (GS-1811) since October 26, 1987.

2.    DHS regulations, Title 6, Code of Federal Regulations, Section 5.4, and Appendix

A, II(I)(3), vest authority in the FOI/PA Officer, Secret Service, to make initial determinations as

to whether to grant Freedom of Information Act (FOIA), 5 U.S.C. § 552, requests for Secret

Service records (68 FR 4056, 4058, and 4069).

3.    As the Secret Service's FOI/PA Officer, I am familiar with plaintiff's FOIA

request to the Secret Service.  Under my direction, the Secret Service conducted a search for documents responsive to plaintiff's request.  That search produced two records, both of which were released in full without redactions or claims of exemptions.  A chronological description of the correspondence in this matter and the processing of plaintiff's FOIA request is set forth below.

4.     By letter to the Secret Service dated January 20, 2006, and received January 23, 2006, plaintiff submitted a FOIA request for records "concerning, relating to, or reflecting . . . [a]ll White House visitor logs from January 1, 2001 to present that reflect the entries and exit(s) of lobbyist Jack Abramoff from the White House."

5.     By letter dated February 2, 2006, I acknowledged receipt of plaintiff's FOIA request and advised plaintiff that a search for records responsive to the request was being conducted.

6.     There are two interrelated systems – collectively termed the White House Access Control System – for controlling and monitoring access to the White House Complex:  the Worker and Visitor Entrance System ("WAVES") and the Access Control Records System ("ACR").

7.     ACR records consist of records generated when a pass holder, worker, or visitor swipes his or her permanent or temporary pass over one of the electronic pass readers located at entrances to and exits from the White House Complex.  ACR records include information such as the pass holder's name and badge number, the time and date of the swipe, and the post at which the swipe was recorded.

8.     WAVES records consist of records generated when information is submitted to

2

the Secret Service about workers and visitors whose business requires their presence at the White House Complex. WAVES records include information additional to that in the ACR records.

9.      In response to plaintiff's request, the FOI/PA Office conducted a search for responsive information. This search was conducted under the direction of the Secret Service's Presidential Protective Division by personnel who conduct FOIA searches as part of their regular responsibilities. The Secret Service searched both the ACR records and the WAVES records for any and all records responsive to plaintiff's FOIA request.

10.     It has been the longstanding practice of the Secret Service to transfer WAVES records on CD-ROM to the White House every 30 to 60 days. Except as noted in paragraph 11 below, once the Secret Service transferred the WAVES records, the Secret Service ensured that those records were erased from its computer system.

11.     In October 2004, at the request of the National Archives and Records Administration, the Secret Service began temporarily retaining its own copy of the WAVES records that it transferred to the White House. As such, the Secret Service has in its possession WAVES records dating back only to October 2004.

12.     ACR records are stored in a searchable database. Records are searchable by visitor name. In this case, the Secret Service searched the ACR database by searching for records generated from January 1, 2001 to the date of the search that had the name "Jack Abramoff" in the visitor field. The Secret Service does not keep ACR records anywhere other than in this searchable database.

13.     WAVES records are stored in a searchable form on CD-ROMs. Records are

3

searchable by visitor name. In this case, the Secret Service explored the WAVES CD-ROMs by searching for records generated from October 2004 to the date of the search that had the name "Abramoff" in the visitor field. As noted in paragraph 11, the Secret Service only has in its possession WAVES records dating from October 2004.

14.    The Secret Service's search of the ACR records produced two pages of records responsive to plaintiff's FOIA request. These records show that Mr. Abramoff visited the White House Complex on March 6, 2001 and January 20, 2004. The two pages of ACR records responsive to plaintiff's FOIA request have slightly different formats because the ACR system changed somewhat between 2001 and 2004.

15.    The Secret Service's search of the WAVES records maintained by the Secret Service produced no WAVES records responsive to plaintiff's FOIA request.

16.    There are a variety of reasons why ACR records are not comprehensive as to entries and exits. For example, guests who visit the complex in a prearranged group for an official function or reception may not appear on the ACR records. In some of those instances visitors are granted entry without going through the turnstiles.

17.    No other documents responsive to plaintiff's FOIA request were found in the search.

18.    No document located in response to plaintiff's request has been withheld in part or in whole.

19.    Pursuant to the terms of a joint stipulation and agreed order, on May 10, 2006, defendant produced, without redactions or claims of exemptions, all documents located in response to plaintiff's January 20, 2006 FOIA request.

4

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing

statements are true and correct to the best of my knowledge and belief.

_5/16/06_
Date

_Kathy J. Lyerly_
Kathy J. Lyerly
Special Agent in Charge, Liaison Division and
Freedom of Information and Privacy Acts Officer
United States Secret Service

5

**<u>EXHIBIT C</u>**

# MEMORANDUM OF UNDERSTANDING
## Between the White House Office of Records Management and the United States Secret Service Records Management Program Governing Records Generated By the White House Access Control System

## INTRODUCTION

1.  This MEMORANDUM OF UNDERSTANDING between the White House Office of Records Management ("White House") and the United States Secret Service Records Management Program ("the Secret Service") (collectively, "The Parties") memorializes and confirms the agreement governing the status and handling of records generated through the White House Access Control System.

## DEFINITIONS

2.  The White House Access Control System ("WHACS") includes two interrelated systems used by the Secret Service for controlling and monitoring access to the White House Complex:

    a.    The Worker and Visitor Entrance System ("WAVES");

    b.    The Access Control Records System ("ACR").

3.  "WHACS Records" include "WAVES Records" and "ACR Records."

4.  "WAVES Records" consist of records generated when an authorized White House pass holder submits to the Secret Service information about visitors (and workers) whose business requires their presence at the White House Complex.

    a.    WAVES Records include the following information submitted by the pass holder: the visitor's name; the visitor's date of birth; the visitor's Social Security Number; the time and location of the planned visit; the name of the pass holder submitting the request; the date of the request.

    b.    Once a visit takes place, WAVES Records are typically updated electronically with information showing the actual time and place of the visitor's entry into and exit from the White House Complex.

5.  "ACR Records" consist of records generated when a White House pass holder, worker, or visitor swipes his or her permanent or temporary pass over one of the electronic pass readers located at entrances to and exits from the White House Complex.

a.  ACR Records include the following information: the pass holder's name and badge number; the time and date of the swipe; and the post at which the swipe was recorded.

6.  "Federal Records" mean documentary materials subject to the Federal Records Act (44 U.S.C. § 3301 et seq.).

7.  "Presidential Records" mean documentary materials subject to the Presidential Records Act (44 U.S.C. § 2201 et seq.).

8.  "The White House Complex" means the White House and the Eisenhower Executive Office Building, and the secured grounds encompassing them, and the New Executive Office Building.

9.  The "White House Office of Records Management" ("WHORM") means the office in the White House responsible for preserving Presidential Records.

## BACKGROUND

10.  WHACS is operated by the Secret Service in order to control and monitor the entry and exit of persons into and out of the White House Complex.

11.  The information contained in WHACS Records originates with White House pass holders, visitors, and workers as a result of White House business.

a.  Such information reflects the conduct of the President's business by providing details about the comings and goings of staff, workers, and visitors to the White House.

12.  The authorized White House pass holders provide information contained in WAVES Records to the Secret Service temporarily for two limited purposes:

a.  To allow the Secret Service to perform background checks to determine whether, and under what conditions, to authorize the visitor's temporary admittance to the White House Complex;

b.  To allow the Secret Service to verify the visitor's admissibility at the time of the visit.

13.  Once the visit ends, the information contained in WAVES Records and ACR Records has no continuing usefulness to the Secret Service.

14.  It has been the longstanding practice of the Secret Service to transfer WAVES Records on CD-ROM to WHORM every 30 to 60 days. Except as noted in paragraph 16 below, once the Secret Service transferred the WAVES Records, the Secret Service ensured that those records were erased from its computer system.

   a.    Under this practice, the Secret Service has retained WAVES Records for completed visits for only a brief period, and solely for the purpose of facilitating an orderly and efficient transfer of those records to WHORM.

15.    The Secret Service historically has retained ACR Records in its computer system without transferring those records to WHORM. In 2004, however, the Secret Service and the White House recognized and agreed that ACR Records should be treated in a manner consistent with the treatment of WAVES Records, and concluded that ACR Records should be transferred to WHORM and eliminated from the Secret Service's files. The Secret Service has continued to maintain ACR Records pending a legal determination of their status as Presidential Records.

16.    In October 2004, at the request of the National Archives and Records Administration ("NARA"), the Secret Service began retaining its own copy of the WAVES Records that it transferred to the White House.

   a.    The Secret Service agreed to NARA's request on the understanding that it would be a temporary practice maintained until a legal determination was made confirming the propriety of handling WHACS Records as Presidential Records.

## UNDERSTANDING AND AGREEMENT

17.    The purpose of this Memorandum of Understanding is to express and embody The Parties' understanding and agreement that WHACS Records whenever created:

   a.    are at all times Presidential Records;

   b.    are not Federal Records; and

   c.    are not the records of an "agency" subject to the Freedom of Information Act (5 U.S.C. § 552).

18.    The Parties understand and agree that all WHACS Records are at all times under the exclusive legal custody and control of the White House.

   a.    Although the Secret Service may at times have physical possession of WHACS Records, such temporary physical possession does not alter the legal status of those records, and does not operate in any way to divest the White House of complete and exclusive legal control.

19.    The Parties understand and agree that any information provided to the Secret Service for the creation, or in the form, of WHACS Records is provided under an express reservation of White House control.

20.  The Parties understand and agree that the White House, but not the Secret Service, has a continuing interest in WHACS Records and that the White House continues to use the information contained in such records for various purposes.  Specifically:

    a.  WAVES Records have historical and other informational value to the White House as evidence of who has been invited and/or granted admission to the White House to meet with the President or members of his staff.

    b.  ACR Records have historical or other informational value to the White House, as evidence of the comings and goings of staff, visitors, and workers at the White House Complex in the conduct of White House business.

21.  The Parties understand and agree that, once a visitor's visit to the White House Complex is complete, the Secret Service has no continuing interest in preserving or retaining WAVES Records.  The Parties also understand and agree that the Secret Service has no interest whatsoever in preserving or retaining ACR Records.

    a.  WHACS Records are therefore not appropriate for preservation by the Secret Service either as evidence of the Secret Service's activities or for their informational value.

22.  The Secret Service understands and agrees that it will regularly transfer all WHACS Records in its possession to WHORM, and that it will not retain its own copies of any WHACS Records except as is necessary to facilitate the transfer of those records to WHORM.

    a.  Any temporary retention of WHACS Records by the Secret Service after the visit, entrance, or exit memorialized by those records is solely for the purpose of facilitating an orderly and efficient transfer of those records, and does not operate in any way to divest the White House of complete and exclusive legal control.

23.  The understandings and agreements expressed herein apply to:

    a.  Any and all WHACS Records currently in the possession or custody of the Secret Service;

    b.  Any and all WHACS Records that may be generated at any time subsequent to the execution of this Memorandum of Understanding.

24.  It is specifically intended by The Parties that the understandings and agreements set forth herein serve as evidence that the White House at all times asserts, and the Secret Service disclaims, all legal control over any and all WHACS Records subject to this Memorandum of Understanding.

a.    The foregoing is not intended, and should not be construed, to suggest that WHACS Records in the possession or custody of the Secret Service before the execution of this Memorandum of Understanding were under the legal control of the Secret Service.

_____
Director, White House Office
of Records Management

_____
Chief Records Officer,
United States Secret Service

Dated:  5 - 17       , 2006

**EXHIBIT A**

# CREW | citizens for responsibility and ethics in washington

October 4, 2006

United States Secret Service
Freedom of Information and Privacy Acts Branch
245 Murray Drive
Building 410
Washington, D.C.  20223

### Re: Freedom of Information Act Request

Dear Sir/Madam:

Citizens for Ethics and Responsibility in Washington ("CREW") makes this request for records, regardless of format, medium, or physical characteristics, and including electronic records and information, pursuant to the Freedom of Information Act ("FOIA") and U.S. Department of Homeland Security ("DHS") regulations, 6 CFR part 5.

This request is for all records relating to any visit that any and all of the following individuals made to the White House or the residence of the Vice President from January 1, 2001, to the present.  As used herein, the term "White House" includes, but is not limited to, any office within the Executive Office of the President, the residence of the President, the Old and New Executive Office Buildings, and any other office or space on the grounds of the White House.  Specifically, we seek any record of visits to the White House or the Vice President's residence by the following individuals:

James Dobson
Gary L. Bauer
Wendy Wright
Louis P. Sheldon
Andrea Lafferty
Paul Weyrich
Tony Perkins
Donald Wildmon
Jerry Falwell

We seek records of any and all kind, including electronic records, audiotapes, videotapes, photographs, and computer print-outs.  Our request includes any telephone messages, voice mail messages, and daily agenda and calendars.

If it is your position that any portion of the requested records is exempt from disclosure, CREW requests that you provide it with an index of those documents, as required under Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1972).  As you are aware, a Vaughn index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA." Founding Church of Scientology v. Bell, 603

F.2d 945, 959 (D.C. Cir. 1979). Moreover, the <u>Vaughn</u> index must "describe each document or portion thereof withheld, and for each withholding it must discuss the consequences of supplying the sought-after information." <u>King v. U.S. Dep't of Justice</u>, 830 F.2d 210, 223-24 (D.C. Cir. 1987).

In the event that some portions of the requested records are properly exempt *from disclosure*, please disclose any reasonably segregable, non-exempt portions of the requested records. *See* 5 U.S.C. §552(b). If it is your position that a document contains non-exempt segments and that those non-exempt segments are so dispersed throughout the documents as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed through the document. <u>Mead Data Central v. U.S. Dep't of the Air Force</u>, 455 F.2d 242, 261 (D.C. Cir. 1977). Claims of non-segregability must be made with the same detail as required for claims of exemptions in a <u>Vaughn</u> index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

### <u>Fee Waiver Request</u>

In accordance with 5 U.S.C. §552(a)(4)(A)(iii), CREW requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government and the disclosures will likely contribute to a better understanding of relevant government procedures by CREW and the general public in a significant way. Moreover, the request is primarily and fundamentally for non-commercial purposes, pursuant to 5 U.S.C. §552(a)(4)(A)(iii). *See, e.g.,* <u>McClellan Ecological v. Carlucci</u>, 835 F.2d 1282, 1285 (9th Cir. 1987). Specifically, the requested records are likely to contribute to the public's understanding of the influence that *conservative Christian leaders have, or attempt to have, on the President in the exercise* of his authority.

CREW is a non-profit corporation, organized under section 501(c)(3) of the *Internal Revenue code. CREW is committed to protecting the citizens' right to be aware* of the activities of government officials and to ensuring the integrity of those officials. CREW is dedicated to empowering citizens to have an influential voice in government decisions and in the government decision-making process. CREW uses a combination of research, litigation, and advocacy to advance its mission. The release of information garnered through this request is not in CREW's financial interest. CREW will analyze the information responsive to this request and intends to share its analysis with the public, either through memoranda, reports, or press releases. CREW has an established record of carrying out these types of activities, as evidenced through its website, www.citizensforethics.org. Currently, the CREW website contains links to thousands of pages of documents acquired from multiple FOIA requests. *See* http://citizensforethics.org/activities/foia.php. Visitors to CREW's website can peruse the FOIA request letters, the responses from government agencies, and a growing number of documents responding to FOIA requests. CREW's virtual reading room provides around-the-clock access to anyone interested in learning about the government activities that were the focus of CREW's FOIA requests. The CREW website also includes documents relating to CREW's FOIA litigation, Internal Revenue Service complaints, and Federal Election Commission complaints.

Under these circumstances, CREW satisfies fully the criteria for a fee waiver.

If you have any questions about this request, or foresee any problems in releasing fully the requested records on an expedited basis, please call Anne Weismann at (202) 408-5565. Also, if CREW's request for a fee waiver is not granted in full, please contact our office immediately upon making such a determination. Please send the requested documents to Anne Weismann, Citizens for Responsibility and Ethics in Washington, 1400 Eye Street, N.W., Suite 450, Washington, D.C. 20005.

Sincerely,

ANNE L. WEISMANN
Chief Counsel
Citizens for Responsibility and Ethics
  in Washington

**<u>EXHIBIT B</u>**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JUDICIAL WATCH, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 06-310 (JGP) |
| UNITED STATES SECRET SERVICE, | ) ) | |
| Defendant. | ) ) | |

## DECLARATION OF KATHY J. LYERLY
### SPECIAL AGENT IN CHARGE, LIAISON DIVISION AND
### FREEDOM OF INFORMATION AND PRIVACY ACTS OFFICER,
### UNITED STATES SECRET SERVICE

I, Kathy J. Lyerly, hereby make the following declaration:

1.    I am the Special Agent in Charge of the Liaison Division and the Freedom of Information and Privacy Acts (FOI/PA) Officer for the United States Secret Service (hereinafter Secret Service), which is a component of the Department of Homeland Security (DHS). I have been the Secret Service FOI/PA Officer since December 28, 2003, and have been employed with the Secret Service as a Special Agent (GS-1811) since October 26, 1987.

2.    DHS regulations, Title 6, Code of Federal Regulations, Section 5.4, and Appendix A, II(I)(3), vest authority in the FOI/PA Officer, Secret Service, to make initial determinations as to whether to grant Freedom of Information Act (FOIA), 5 U.S.C. § 552, requests for Secret Service records (68 FR 4056, 4058, and 4069).

3.    As the Secret Service's FOI/PA Officer, I am familiar with plaintiff's FOIA

request to the Secret Service. Under my direction, the Secret Service conducted a search for documents responsive to plaintiff's request. That search produced two records, both of which were released in full without redactions or claims of exemptions. A chronological description of the correspondence in this matter and the processing of plaintiff's FOIA request is set forth below.

4.    By letter to the Secret Service dated January 20, 2006, and received January 23, 2006, plaintiff submitted a FOIA request for records "concerning, relating to, or reflecting . . . [a]ll White House visitor logs from January 1, 2001 to present that reflect the entries and exit(s) of lobbyist Jack Abramoff from the White House."

5.    By letter dated February 2, 2006, I acknowledged receipt of plaintiff's FOIA request and advised plaintiff that a search for records responsive to the request was being conducted.

6.    There are two interrelated systems – collectively termed the White House Access Control System – for controlling and monitoring access to the White House Complex: the Worker and Visitor Entrance System ("WAVES") and the Access Control Records System ("ACR").

7.    ACR records consist of records generated when a pass holder, worker, or visitor swipes his or her permanent or temporary pass over one of the electronic pass readers located at entrances to and exits from the White House Complex. ACR records include information such as the pass holder's name and badge number, the time and date of the swipe, and the post at which the swipe was recorded.

8.    WAVES records consist of records generated when information is submitted to

2

the Secret Service about workers and visitors whose business requires their presence at the White

House Complex.  WAVES records include information additional to that in the ACR records.

9.     In response to plaintiff's request, the FOI/PA Office conducted a search for

responsive information.  This search was conducted under the direction of the Secret Service's

Presidential Protective Division by personnel who conduct FOIA searches as part of their regular

responsibilities.  The Secret Service searched both the ACR records and the WAVES records for

any and all records responsive to plaintiff's FOIA request.

10.     It has been the longstanding practice of the Secret Service to transfer WAVES

records on CD-ROM to the White House every 30 to 60 days.  Except as noted in paragraph 11

below, once the Secret Service transferred the WAVES records, the Secret Service ensured that

those records were erased from its computer system.

11.     In October 2004, at the request of the National Archives and Records

Administration, the Secret Service began temporarily retaining its own copy of the WAVES

records that it transferred to the White House.  As such, the Secret Service has in its possession

WAVES records dating back only to October 2004.

12.     ACR records are stored in a searchable database.  Records are searchable by

visitor name.  In this case, the Secret Service searched the ACR database by searching for records

generated from January 1, 2001 to the date of the search that had the name "Jack Abramoff" in

the visitor field.  The Secret Service does not keep ACR records anywhere other than in this

searchable database.

13.     WAVES records are stored in a searchable form on CD-ROMs.  Records are

3

searchable by visitor name. In this case, the Secret Service explored the WAVES CD-ROMs by searching for records generated from October 2004 to the date of the search that had the name "Abramoff" in the visitor field. As noted in paragraph 11, the Secret Service only has in its possession WAVES records dating from October 2004.

14.     The Secret Service's search of the ACR records produced two pages of records responsive to plaintiff's FOIA request. These records show that Mr. Abramoff visited the White House Complex on March 6, 2001 and January 20, 2004. The two pages of ACR records responsive to plaintiff's FOIA request have slightly different formats because the ACR system changed somewhat between 2001 and 2004.

15.     The Secret Service's search of the WAVES records maintained by the Secret Service produced no WAVES records responsive to plaintiff's FOIA request.

16.     There are a variety of reasons why ACR records are not comprehensive as to entries and exits. For example, guests who visit the complex in a prearranged group for an official function or reception may not appear on the ACR records. In some of those instances visitors are granted entry without going through the turnstiles.

17.     No other documents responsive to plaintiff's FOIA request were found in the search.

18.     No document located in response to plaintiff's request has been withheld in part or in whole.

19.     Pursuant to the terms of a joint stipulation and agreed order, on May 10, 2006, defendant produced, without redactions or claims of exemptions, all documents located in response to plaintiff's January 20, 2006 FOIA request.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing statements are true and correct to the best of my knowledge and belief.

_5/16/06_
Date

_Kathy J. Lyerly_
Kathy J. Lyerly
Special Agent in Charge, Liaison Division and
Freedom of Information and Privacy Acts Officer
United States Secret Service

**EXHIBIT C**

# MEMORANDUM OF UNDERSTANDING
## Between the White House Office of Records Management and the United States Secret Service Records Management Program Governing Records Generated By the White House Access Control System

### INTRODUCTION

1.  This MEMORANDUM OF UNDERSTANDING between the White House Office of Records Management ("White House") and the United States Secret Service Records Management Program ("the Secret Service") (collectively, "The Parties") memorializes and confirms the agreement governing the status and handling of records generated through the White House Access Control System.

### DEFINITIONS

2.  The White House Access Control System ("WHACS") includes two interrelated systems used by the Secret Service for controlling and monitoring access to the White House Complex:

    a.      The Worker and Visitor Entrance System ("WAVES");

    b.      The Access Control Records System ("ACR").

3.  "WHACS Records" include "WAVES Records" and "ACR Records."

4.  "WAVES Records" consist of records generated when an authorized White House pass holder submits to the Secret Service information about visitors (and workers) whose business requires their presence at the White House Complex.

    a.      WAVES Records include the following information submitted by the pass holder: the visitor's name; the visitor's date of birth; the visitor's Social Security Number; the time and location of the planned visit; the name of the pass holder submitting the request; the date of the request.

    b.      Once a visit takes place, WAVES Records are typically updated electronically with information showing the actual time and place of the visitor's entry into and exit from the White House Complex.

5.  "ACR Records" consist of records generated when a White House pass holder, worker, or visitor swipes his or her permanent or temporary pass over one of the electronic pass readers located at entrances to and exits from the White House Complex.

a.   ACR Records include the following information: the pass holder's name and badge number; the time and date of the swipe; and the post at which the swipe was recorded.

6.   "Federal Records" mean documentary materials subject to the Federal Records Act (44 U.S.C. § 3301 et seq.).

7.   "Presidential Records" mean documentary materials subject to the Presidential Records Act (44 U.S.C. § 2201 et seq.).

8.   "The White House Complex" means the White House and the Eisenhower Executive Office Building, and the secured grounds encompassing them, and the New Executive Office Building.

9.   The "White House Office of Records Management" ("WHORM") means the office in the White House responsible for preserving Presidential Records.

## BACKGROUND

10.  WHACS is operated by the Secret Service in order to control and monitor the entry and exit of persons into and out of the White House Complex.

11.  The information contained in WHACS Records originates with White House pass holders, visitors, and workers as a result of White House business.

a.   Such information reflects the conduct of the President's business by providing details about the comings and goings of staff, workers, and visitors to the White House.

12.  The authorized White House pass holders provide information contained in WAVES Records to the Secret Service temporarily for two limited purposes:

a.   To allow the Secret Service to perform background checks to determine whether, and under what conditions, to authorize the visitor's temporary admittance to the White House Complex;

b.   To allow the Secret Service to verify the visitor's admissibility at the time of the visit.

13.  Once the visit ends, the information contained in WAVES Records and ACR Records has no continuing usefulness to the Secret Service.

14.  It has been the longstanding practice of the Secret Service to transfer WAVES Records on CD-ROM to WHORM every 30 to 60 days. Except as noted in paragraph 16 below, once the Secret Service transferred the WAVES Records, the Secret Service ensured that those records were erased from its computer system.

a.     Under this practice, the Secret Service has retained WAVES Records for completed visits for only a brief period, and solely for the purpose of facilitating an orderly and efficient transfer of those records to WHORM.

15.     The Secret Service historically has retained ACR Records in its computer system without transferring those records to WHORM. In 2004, however, the Secret Service and the White House recognized and agreed that ACR Records should be treated in a manner consistent with the treatment of WAVES Records, and concluded that ACR Records should be transferred to WHORM and eliminated from the Secret Service's files. The Secret Service has continued to maintain ACR Records pending a legal determination of their status as Presidential Records.

16.     In October 2004, at the request of the National Archives and Records Administration ("NARA"), the Secret Service began retaining its own copy of the WAVES Records that it transferred to the White House.

a.     The Secret Service agreed to NARA's request on the understanding that it would be a temporary practice maintained until a legal determination was made confirming the propriety of handling WHACS Records as Presidential Records.

## UNDERSTANDING AND AGREEMENT

17.     The purpose of this Memorandum of Understanding is to express and embody The Parties' understanding and agreement that WHACS Records whenever created:

a.     are at all times Presidential Records;

b.     are not Federal Records; and

c.     are not the records of an "agency" subject to the Freedom of Information Act (5 U.S.C. § 552).

18.     The Parties understand and agree that all WHACS Records are at all times under the exclusive legal custody and control of the White House.

a.     Although the Secret Service may at times have physical possession of WHACS Records, such temporary physical possession does not alter the legal status of those records, and does not operate in any way to divest the White House of complete and exclusive legal control.

19.     The Parties understand and agree that any information provided to the Secret Service for the creation, or in the form, of WHACS Records is provided under an express reservation of White House control.

20.    The Parties understand and agree that the White House, but not the Secret Service, has a continuing interest in WHACS Records and that the White House continues to use the information contained in such records for various purposes.  Specifically:

    a.    WAVES Records have historical and other informational value to the White House as evidence of who has been invited and/or granted admission to the White House to meet with the President or members of his staff.

    b.    ACR Records have historical or other informational value to the White House, as evidence of the comings and goings of staff, visitors, and workers at the White House Complex in the conduct of White House business.

21.    The Parties understand and agree that, once a visitor's visit to the White House Complex is complete, the Secret Service has no continuing interest in preserving or retaining WAVES Records.  The Parties also understand and agree that the Secret Service has no interest whatsoever in preserving or retaining ACR Records.

    a.    WHACS Records are therefore not appropriate for preservation by the Secret Service either as evidence of the Secret Service's activities or for their informational value.

22.    The Secret Service understands and agrees that it will regularly transfer all WHACS Records in its possession to WHORM, and that it will not retain its own copies of any WHACS Records except as is necessary to facilitate the transfer of those records to WHORM.

    a.    Any temporary retention of WHACS Records by the Secret Service after the visit, entrance, or exit memorialized by those records is solely for the purpose of facilitating an orderly and efficient transfer of those records, and does not operate in any way to divest the White House of complete and exclusive legal control.

23.    The understandings and agreements expressed herein apply to:

    a.    Any and all WHACS Records currently in the possession or custody of the Secret Service;

    b.    Any and all WHACS Records that may be generated at any time subsequent to the execution of this Memorandum of Understanding.

24.    It is specifically intended by The Parties that the understandings and agreements set forth herein serve as evidence that the White House at all times asserts, and the Secret Service disclaims, all legal control over any and all WHACS Records subject to this Memorandum of Understanding.

a.    The foregoing is not intended, and should not be construed, to suggest that WHACS Records in the possession or custody of the Secret Service before the execution of this Memorandum of Understanding were under the legal control of the Secret Service.

_____
Director, White House Office
of Records Management

_____
Chief Records Officer,
United States Secret Service

Dated: S - 17 , 2006

JS-44
(Rev. 2/01 DC)

# CIVIL COVER SHEET

OO
I 2nu

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Citizens for Responsibility and Ethics in Washington | U.S. Department of Homeland Security and Allen Weinstein, in his official capacity as Archivist of the United States |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF     11001<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT     11001<br>(IN U.S. PLAINTIFF CASES ONLY) |

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Anne L. Weismann
Citizens for Responsibility and Ethics in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C. 20005
202-408-5565

CASE NUMBER   1:06CV01912

JUDGE: Ricardo M. Urbina

DECK TYPE: FOIA/Privacy Act

DATE STAMP: 11/09/2006

## II BASIS OF JURISDICTION
(SELECT ONE BOX ONLY)

○ 1 U.S. Government
  Plaintiff

⊙ 2 U.S. Government
  Defendant

○ 3 Federal Question
  (U.S. Government Not a Party)

○ 4 Diversity
  (Indicate Citizenship of
  Parties in item III)

## III CITIZENS
( FOR DIVERSITY CASES ONLY!)

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place<br>of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of<br>Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a<br>Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Select one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ C. Administrative Agency Review

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
      Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be
selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ F. Pro Se General Civil

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of
      Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or
      defendant)
☐ 871 IRS-Third Party 26 USC 7609

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced & Corrupt
      Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal
      access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not
      administrative agency review or Privacy Act)

☐ 385 Property Damage Product
      Liability

☐ 840 Trademark

| ○ G. Habeas Corpus/2255 | ○ H. Employment Discrimination | ○ I. FOIA/PRIVACY ACT | ○ J. Student Loan |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national<br>origin, discrimination, disability, age,<br>religion, retaliation)<br><br>*(If pro se, select this deck)* | ☒ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student<br>Loans (excluding veterans) |

| ○ K. Labor/ERISA (non-employment) | ○ L. Other Civil Rights (non-employment) | ○ M. Contract | ○ N. Three-Judge Court |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability | ☐ 441 Civil Rights-Voting (if Voting<br>Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

5 USC sec. 552. DHS failed to respond to plaintiff's FOIA request; APA, Archivist failed to enforce Federal Records Act

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23   DEMAND $ _____ Select YES only if demanded in complaint  JURY DEMAND: ☐ YES  ☒ NO

**VIII. RELATED CASE(S) IF ANY** (See instruction)   ☒ YES   ☐ NO   If yes, please complete related case form.

DATE  11/09/06   SIGNATURE OF ATTORNEY OF RECORD

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.