UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, ) ) ) ) Plaintiff, ) ) v. ) ) U.S. DEPARTMENT OF HOMELAND SECURITY, et al., ) ) ) ) Defendants. ) ) | CIVIL ACTION NO. 1:06-cv-01912-JGP |

**OPPOSITION TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER**

INTRODUCTION

Plaintiff seeks an order requiring the United States Secret Service to retain records that might be responsive to the Freedom of Information Act request that is the subject of this action. The Secret Service, however, is already retaining those records or copies of them, and has indicated that it will continue to do so. See Second Declaration of Paul S. Morrissey ¶¶ 4, 11-13, 18 (Mar. 5, 2007) (Attachment 1 hereto). There is no reason to doubt that assurance, which has been sworn to under penalty of perjury and which is entitled to a presumption of good faith. Plaintiff cannot, therefore, show that it would suffer "irreparable injury" without the order requested, and plaintiff's motion should be denied.

ARGUMENT

As the Supreme Court and this Court have recognized, "a preliminary injunction [or temporary restraining order] is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." National Head

Start Ass'n v. HHS, 297 F. Supp. 2d 242, 246 (D.D.C. 2004) (quoting Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)).  To secure such relief, the plaintiff "must demonstrate 1) a substantial likelihood of success on the merits, 2) that it would suffer irreparable injury if the injunction is not granted, 3) that an injunction would not substantially injure other interested parties, and 4) that the public interest would be furthered by the injunction."  CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 746 (D.C. Cir. 1995).

      Although these factors are balanced on a scale, id. at 747, the courts require "[a] clear showing of irreparable harm" regardless of the strength or weakness of plaintiff's showing on the other factors.  Thus, where the plaintiff "has made no showing of irreparable injury . . . that alone is sufficient" to deny the motion.  Id.; see O.K. v. Bush, 377 F. Supp. 2d 102, 111 (D.D.C. 2005) ("A clear showing of irreparable harm . . . is the sine qua non of preliminary injunctive relief.").  The D.C. Circuit, moreover, "has set a high standard for irreparable injury."  Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006).  The injury must be "both certain and great," not "theoretical."  Id. (quoting Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)).  It must be of "such imminence that there is a 'clear and present need' for equitable relief to prevent irreparable harm."  Id.

      The evidence submitted by defendants — the Declaration of Paul S. Morrissey, filed on February 22, 2007, and the Second Declaration of Paul S. Morrissey submitted herewith ("Second Morrissey Decl.") — establishes beyond doubt that the Secret Service is retaining the types of records, or copies of the records, that might contain records responsive to plaintiff's

FOIA request.[1]  The declaration submitted herewith describes the types of records that could contain records responsive to plaintiff's request.[2]  Specifically, there are electronic records from the Worker and Visitor Entrance System ("WAVES") and the Access Control Records System ("ACR") at the White House Complex, handwritten post entry logs from the Vice President's Residence ("VPR"), permanent and daily access lists from the VPR, access lists for special events at the VPR, and paper records such as requests for access from both the White House Complex and the VPR.  See Second Morrissey Decl. ¶¶ 9, 10, 16, 17.  Additionally, there are records created by the Secret Service in the course of conducting background investigations regarding proposed visitors and workers — including Secret Service Form 1888s, "hit reports," and associated files — and Watch Commander Journals that record security incidents at the VPR.  Id. ¶¶ 15, 20.

The accompanying declaration reiterates, moreover, that the Secret Service is retaining each of these types of records or copies thereof that could contain records responsive to this FOIA request.  Id. ¶¶ 11-13, 18.  Specifically, the Secret Service has been retaining copies of the WAVES data and records and is still doing so.  Id. ¶ 11.  The agency is also retaining copies of

---

[1] Whether there is a "likelihood of success" on plaintiff's contention that the records sought are "agency records" subject to the FOIA, CityFed Fin. Corp., 58 F.3d at 746, should be irrelevant to whether the records are retained pending litigation.  Plaintiff's motion does not (and could not) seek, pendente lite, the relief sought in its complaint, but rather an order requiring one of the defendants to retain the corpus that is the subject of the litigation.  Defendants agree, however, that the records under dispute here will be retained pending resolution of this litigation.

[2] The declarant is the Deputy Assistant Director of the Secret Service Office of Protective Operations, which is "responsible for . . . overseeing the operational divisions that protect the persons, places, and events that the Secret Service is authorized to protect."  See Second Morrissey Decl. ¶ 3.  Thus, as stated by the declarant, he is speaking for the Secret Service in regard to its retention of records responsive or potentially responsive to plaintiff's FOIA request.  Id. ¶ 2.

ACR records and of requests for access to the White House Complex. Id. ¶¶ 12, 13. Further, the Secret Service has been retaining, since June 2006, the post entry logs, access lists, requests for access, and event lists in relation to the VPR, or copies of such records. Id. ¶ 18. Finally, the Secret Service is retaining records associated with Secret Service background investigations and security measures that may be responsive to plaintiff's FOIA request. Id. ¶¶ 15, 20.

      Moreover, a federal agency's assurances that it will act in a certain way, such as these assurances by the Secret Service, are entitled to a presumption of good faith. For example, in rejecting a contention that the district court should have incorporated into an order an agency's assurances regarding its future conduct, the D.C. Circuit noted:

> As we have so often said, "agencies are entitled to a presumption of administrative regularity and good faith," and "[w]ith no indication that the [agency] will act cavalierly or in bad faith," its assertions with respect to [its future conduct] should be accepted at face value.

FTC v. Invention Submission Corp., 965 F.2d 1086, 1091 (D.C. Cir. 1992) (quoting FTC v. Owens-Corning Fiberglas Corp., 626 F.2d 966, 975 (D.C. Cir. 1980)). Even more specifically in relation to this case, agency affidavits in FOIA cases are "accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims . . . .'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)); see Piper v. U.S. Dep't of Justice, 294 F. Supp. 2d 16, 24 (D.D.C. 2003) ("the Government enjoys a good faith presumption in FOIA actions"). Plaintiff's groundless challenges to defendants' good faith in this or similar litigation reflect nothing more than plaintiff's disagreement with defendants on the merits of whether the records at issue are properly treated as non-agency records. See Plaintiff's Reply to Defendants' Response to Plaintiff's

Motion for a Temporary Restraining Order at 1-2 (docket #15); Transcript of Motions Hearing (Feb. 16, 2007), at 13-17 (docket #19). Such disagreement does not constitute "bad faith," and surely provides no basis to believe that the government would ignore its solemn assurances to this Court that the relevant records are being preserved, or that the Secret Service would act in any way contrary to its sworn representations.

CONCLUSION

Accordingly, plaintiff cannot show a "clear and present need for equitable relief to prevent irreparable harm," Chaplaincy of Full Gospel Churches, 454 F.3d at 297, and the motion for a temporary restraining order should be denied.

Dated: March 5, 2007

>Respectfully submitted,

>PETER D. KEISLER
>Assistant Attorney General

>CARL J. NICHOLS
>Deputy Assistant Attorney General

>JEFFREY A. TAYLOR
>United States Attorney

>ELIZABETH J. SHAPIRO, D.C. Bar 418925
>Assistant Director

>_____
>W. SCOTT SIMPSON, Va. Bar 27487
>Senior Trial Counsel

        Attorneys, Department of Justice
        Civil Division, Room 7210
        Post Office Box 883
        Washington, D.C. 20044
        Telephone:  (202) 514-3495
        Facsimile:   (202) 616-8470
        E-mail: scott.simpson@usdoj.gov

        COUNSEL FOR DEFENDANTS

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND  )
ETHICS IN WASHINGTON,            )
                                 )
                    Plaintiff,   )
                                 )    CIVIL ACTION NO.
        v.                       )    1:06-cv-01912-JGP
                                 )
U.S. DEPARTMENT OF HOMELAND      )
SECURITY, et al.,                )
                                 )
                    Defendants.  )
_____)

### SECOND DECLARATION OF PAUL S. MORRISSEY
### DEPUTY ASSISTANT DIRECTOR
### UNITED STATES SECRET SERVICE

I, Paul S. Morrissey, hereby declare as follows:

1. I am the Deputy Assistant Director of the Office of Protective Operations ("OPO") for the United States Secret Service ("Secret Service"), which is a component of the Department of Homeland Security ("DHS"). I have held this position since September 2006, and have been a special agent with the Secret Service since January 1983. The statements made herein are based on my personal knowledge or on information made available to me in my official capacity.

2. The purpose of this declaration is to supplement my declaration of February 21, 2007 (which, I am informed, was filed on February 22), and to respond to Plaintiff's Response to Defendants' Notice of Filing and Declaration of Paul S. Morrissey. In my capacity as the Deputy Assistant Director of the OPO, I am making representations on behalf of the Secret Service as an Agency and not solely on behalf of the OPO.

3. The Office of Protective Operations is one of eight directorates in the Secret Service that manage various operational and support functions. The OPO is responsible for establishing policies related to the Secret Service's protective mission and for overseeing the operational divisions that protect the persons, places, and events that the Secret Service is authorized to protect.

4. I am advised that this lawsuit relates to a Freedom of Information Act request for records relating to any visit to the White House or the Vice President's Residence, from January 1, 2001, to the present, by James Dobson, Gary L. Bauer, Wendy Wright, Louis P. Sheldon, Andrea Lafferty, Paul Weyrich, Tony Perkins, Donald Wildmon, or Jerry Falwell. I am advised, further, that the request defines "White House" as including "any office within the Executive Office of the President, the residence of the President, the Old and New Executive Office Buildings, and any other office or space on the grounds of the White House."

5. As described in more detail below, the Secret Service is preserving, and will continue to preserve, types of records that may include records responsive to this FOIA request. The Secret Service will not, during the pendency of this litigation, transfer any potentially responsive records to any other entity, including the White House Office of Records Management ("WHORM") or the Office of the Vice President ("OVP"), without first creating and retaining a copy of such record, or otherwise preserving the record.

6. The "White House Complex" (also "Complex"), as secured by the Secret Service, includes the White House; the Eisenhower Executive Office Building ("EEOB"), which is also known as the "Old Executive Office Building"; the grounds encompassing the EEOB and the White House; and the New Executive Office Building ("NEOB"). Housed in the White House,

2

the EEOB and the NEOB are the offices of various staff of the Executive Office of the President ("EOP"), as well as offices for the staff of the Office of the Vice President. Some EOP offices exist outside the White House Complex, but the Secret Service does not maintain or operate access systems at those sites.

7. The Vice President's Residence ("VPR") is located at One Observatory Circle, Washington, D.C., on the grounds of the United States Naval Observatory. The Secret Service provides security for the Vice President at the VPR.

8. As part of its function to provide security for the White House Complex and the VPR, the Secret Service monitors and controls access to both locations.

### Records Regarding the White House Complex

9. There are two interrelated electronic systems – collectively termed the White House Access Control System ("WHACS") – for controlling and monitoring access to the White House Complex: the Worker and Visitor Entrance System ("WAVES") and the Access Control Records System ("ACR").

10. WAVES records regarding workers and visitors to the White House Complex consist primarily of information that an authorized White House pass holder has provided to the Secret Service. Upon arrival, a visitor to the Complex is generally issued an appropriate pass (although passes are often not issued for large groups). ACR records are generated when a pass holder, worker, visitor, or Secret Service officer on an individual's behalf swipes his or her pass over one of the electronic pass readers located at entrances to and exits from the White House Complex.

11.     Since at least 2001, it has been the practice of the Secret Service to transfer newly-generated WAVES records on CD-ROM to the WHORM every 30 to 60 days. I am advised that in November 2004 (beginning with October 2004 records) the Secret Service began temporarily retaining a copy of the WAVES records that it transferred to the WHORM. The Secret Service continues to retain one or more copies of transferred WAVES records, due to pending litigation and FOIA requests. The Secret Service also continues to retain certain pre-October 2004 WAVES data found on the hard drives of two Secret Service computers located in the Information Technology Section of the Presidential Protective Division.

12.     In May 2006, the Secret Service transferred to the WHORM the ACR records covering the period from 12:00 p.m. on January 20, 2001, to April 30, 2006. However, the Secret Service retained one or more copies of those ACR records due to pending litigation and FOIA requests. Since the time of that transfer, the Secret Service has continued to transfer ACR records to the WHORM, but continues to retain one or more copies of ACR records. The Secret Service also continues to retain one or more copies of pre-January 20, 2001, ACR records.

13.     In addition, the Secret Service has been transferring to the WHORM certain paper records regarding workers and visitors for some time, typically every 30 to 60 days. In general, these paper records consist of certain types of requests for access to the White House Complex that have been entered into WAVES, such as large event lists, facsimiles, and e-mails. The Secret Service has recently begun retaining these materials, or copies of these materials, due to pending litigation and FOIA requests.[1]

---

[1] I have been advised that, in the course of an office move at the White House Complex, the Secret Service recently discovered a number of paper access requests and other paper records

(continued...)

4

14. I am advised that the White House Office has approved the above-described retention of records by the Secret Service, though expressly without prejudice to the control of the subject records by the President under the Presidential Records Act.

15. Apart from the records described above, the Secret Service itself sometimes creates and/or uses certain records, reflecting or concerning background investigation information. These include Secret Service Form ("SSF") 1888s and other background investigation information. The Secret Service does not transfer this information to the WHORM or the OVP. Within these types of records, potentially responsive records are being retained by the Secret Service.

### Records Regarding the Vice President's Residence

16. The WAVES and ACR systems are not used at the VPR. The Secret Service receives requests from the Vice President's staff or from authorized military personnel to screen individuals for entry to the VPR. The Secret Service monitors and controls access to the VPR through the use of a daily access list and a permanent access list, which reflect information provided by the Office of the Vice President or other requestors. The names of individuals who enter on a particular day, along with the time and date, are handwritten on an entry log by the officer working at the gate where the individual arrives.

17. In addition to the permanent access lists, daily access lists, and post entry logs, the Secret Service uses (1) an electronic database containing information regarding individuals

---

[1](...continued)
regarding visitors and workers, covering the period March 2001 through October 2001, in an unexpected location. The Secret Service has now transferred those records to the WHORM, but retained a copy due to pending litigation and FOIA requests.

seeking access, which is used for generating both the permanent and daily access lists; (2) requests for access, from OVP staff, military and Secret Service personnel, received primarily by e-mail and occasionally by facsimile or other means; and (3) lists from the OVP of invited guests and workers for special events in controlling access to the VPR.

18. Since 2001, the Secret Service's consistent practice has been to transfer to the OVP, on a monthly basis (dating back to January 2001), all handwritten post entry logs from the VPR. In June 2006, the Secret Service Special Agent in Charge, Liaison Division, who is also the agency's Freedom of Information and Privacy Acts Officer ("FOI/PA Officer"), directed that records concerning access to the VPR be retained. The Secret Service then began retaining a copy of each post entry log that it transfers to the OVP, pending a judicial determination of their legal status. The Secret Service also began retaining permanent access lists, daily access lists, requests for access, and event lists, and has ceased purging information from the access list database.[2]

19. I am advised that the OVP has approved the above-described retention of records by the Secret Service, though expressly without prejudice to the control of the subject records by the Vice President under the Presidential Records Act.

20. Apart from the above-described records regarding visitors to the VPR, the Secret Service itself creates and uses certain records known as "hit" reports as part of the background

---

[2] In the course of conducting a search for records potentially responsive to a different FOIA request, the Secret Service discovered some paper copies of requests for admission and daily access lists, a number of which pre-date the June 2006 direction from the FOI/PA Officer, in places where such documents are not normally stored, but these records are from sporadic dates and are not comprehensive. In accordance with the FOI/PA Officer's direction, these documents have been retained.

investigation process. Also apart from the above-described records, the Secret Service officer commanding each shift at the VPR creates a Watch Commander Journal to record security-related incidents as well as the arrivals and departures of the Vice President and Mrs. Cheney, and, in some instances, other visitors to the residence. The Watch Commander Journals are created to provide situational awareness for watch commanders between shifts and to provide a means for them to apprise themselves of what went on at the residence in their absence. The Secret Service does not transfer this information to the WHORM or the OVP. The Watch Commander Journals and the hit reports are being retained.

    I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 5TH, 2007.

*[signature]*
PAUL S. MORRISSEY