**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON ) ) ) Plaintiff, ) v. ) ) U.S. DEPARTMENT OF HOMELAND SECURITY, *et al*., ) ) ) Defendants. ) ) | Civil Action No. 06-01912 (JGP) |

**MOTION OF JUDICIAL WATCH, INC. FOR LEAVE
TO FILE *AMICUS CURIAE* BRIEF**

Judicial Watch, Inc. ("Judicial Watch") respectfully moves this Court for leave to file the accompanying *amicus curiae* brief in support of Plaintiff, Citizens For Responsibility and Ethics in Washington ("CREW"). The purpose of Judicial Watch's *amicus curiae* brief is to assist the Court in this case of constitutional importance. CREW has consented to this motion. Defendant, U.S. Department of Homeland Security ("DHS"), opposes this motion.[1]

**MEMORANDUM OF LAW**

Judicial Watch is a not-for-profit organization that seeks to promote transparency, integrity, and accountability in government and fidelity to the rule of law. In furtherance of these goals, Judicial Watch regularly monitors on-going litigation, files *amicus curiae* briefs, and pursues public interest litigation of its own, among other activities. Judicial Watch seeks to participate as *amicus curiae* in this matter for two separate, but related reasons. First, Defendants

---

[1]    Counsel for DHS stated that it was opposed to Judicial Watch's filing an *amicus* brief after July 11, 2007.

in this case seek to turn Freedom of Information Act ("FOIA") law and significant, longstanding constitutional principles on their head. Second, Judicial Watch is particularly concerned about Defendants' use of an overly broad interpretation of *Cheney v. U.S. District Court*, 542 U.S. 367 (2004), to assert a brand-new absolute privilege for ***any*** record that in any way involves either the President or Vice President. Judicial Watch was a party in *Cheney*, which gives Judicial Watch a unique perspective on the U.S. Supreme Court's ruling in *Cheney* – a perspective that no other party in this case has.

Judicial Watch's proposed *amicus curiae* brief, while supporting the Plaintiff, is primarily for the purpose of assisting the Court. In addition to bringing a unique perspective to the case, several factors support permitting Judicial Watch's request for leave to file an *amicus curiae* brief. First, Judicial Watch has a familiarity with and knowledge of the issues contained in the proposed brief. Judicial Watch is a frequent FOIA litigator and has in fact litigated the issue of White House visitor logs. *See Judicial Watch, Inc. v. U.S. Secret Service*, Civil Case No. 06-0310 (JGP). Second, Judicial Watch's proposed brief does not seek to simply reiterate arguments raised by another party. Rather, its analysis focuses more broadly on concerns of accountability in government and fidelity to the rule of law. Judicial Watch's proposed brief also does not create, extend, enlarge or initiate any new issues. Third, Judicial Watch's proposed brief is both timely and useful. Plaintiff submitted its opposition on July 11, 2007 and Defendants have until August 1, 2007 to reply to the opposition. It is not required that Defendants reply to Judicial Watch's proposed *amicus curiae* brief – however, should Defendants wish to reply to the brief, there is ample time remaining in the existing briefing schedule. In other words, permitting Judicial Watch to participate as an *amicus* will in no way prejudice or cause an undue burden for any of the parties.

For the above reasons, Judicial Watch respectfully requests that this motion for leave to file the accompanying *amicus curiae* brief be granted.

Dated:  July 13, 2007                                    Respectfully submitted,


                                                         /s/ Meredith L. Di Liberto
                                                         D.C. Bar No. 487733
                                                         /s/ Paul J. Orfanedes
                                                         D.C. Bar No. 429716
                                                         /s/ Jason B. Aldrich
                                                         D.C. Bar No. 495488
                                                         JUDICIAL WATCH, INC.
                                                         501 School Street, S.W.
                                                         Suite 500
                                                         Washington, D.C.  20024
                                                         (202) 646-5172

                                                         *Counsel for Amicus Curiae*


## LOCAL RULE 7(m) CERTIFICATE

On June 15, 2007, I contacted Anne Weisman, counsel for Plaintiff, Citizens For Responsibility and Ethics in Washington ("CREW"), by email to inquire whether she would consent to Judicial Watch seeking leave to file an *amicus curiae* brief.  Ms. Weisman consented.

On July 3, 2007, I contacted Scott Simpson, counsel for Defendants U.S. Department of Homeland Security ("DHS") and Allen Weinstein, by email to inquire whether he would consent to Judicial Watch seeking leave to file an *amicus curiae* brief.  I received a response from Mr. Simpson on July 5, 2007 that he was consulting with other individuals about Judicial Watch's request.  On July 9, 2007, after close of business, Mr. Simpson replied by email that Defendants opposed Judicial Watch's brief unless it was filed on July 11, 2007.


                                                         /s/ Meredith L. Di Liberto

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CITIZENS FOR RESPONSIBILITY AND        )
ETHICS IN WASHINGTON                   )
                                       )
                    Plaintiff,         )
v.                                     )
                                       )        Civil Action No. 06-01912 (JGP)
U.S. DEPARTMENT OF HOMELAND            )
SECURITY, *et al.*,                    )
                                       )
                    Defendants.        )
_____    )

**_AMICUS CURIAE_ BRIEF OF JUDICIAL WATCH, INC.**
**IN SUPPORT OF PLAINTIFF**

Judicial Watch, Inc. ("Judicial Watch"), by counsel, respectfully submits this *amicus*

*curie* brief, in support of Plaintiff, Citizens For Responsibility and Ethics in Washington

("CREW"). Judicial Watch states as follows:

**INTEREST OF THE PROPOSED AMICUS**

As set forth in Judicial Watch's motion seeking leave to file this proposed *amicus curiae*

brief, Judicial Watch is a not-for-profit organization that seeks to promote transparency,

accountability, and integrity in government and fidelity to the rule of law. In furtherance of these

goals, Judicial Watch regularly monitors on-going litigation, files *amicus curiae* briefs, and

pursues public interest litigation of its own, among other activities. Judicial Watch seeks to

participate as *amicus curiae* in this matter for two separate, but interrelated reasons. First,

Defendants in this case seek to turn Freedom of Information Act ("FOIA") law and significant,

longstanding constitutional principles on their head. Second, Judicial Watch is particularly

concerned about Defendants' use of an overly broad interpretation of *Cheney v. U.S. District*

*Court*, 542 U.S. 367 (2004), to assert a brand-new absolute privilege for *any* record that in any way involves either the President or Vice President. Judicial Watch was a party in *Cheney*, which gives Judicial Watch a unique perspective on the U.S. Supreme Court's ruling in *Cheney* – a perspective that no other party in this case has.

## SUMMARY OF THE ARGUMENT

This is a very simple case. The law is very clear and Defendants' attempts to distract from the simplicity and clarity are as hollow as the legal assertions they put forth in their motion for summary judgment. Cutting through Defendants' hyperbole and Doomsday scenarios, they are left with nothing more than a desperate attempt to manipulate FOIA, relying on only misconstrued precedent and an Administration's preference to keep government activities from the light of public scrutiny.

The U.S. Secret Service ("Secret Service") is an agency within the meaning of FOIA and its records are therefore subject to FOIA. The law provides no exceptions for particular types of Secret Service records and does not excuse the Secret Service from complying with FOIA simply because its mission includes daily contact with the President and Vice President. Therefore, records created by or obtained by the Secret Service and within the Secret Service's control are considered "agency records" for the purposes of FOIA. Such records must be produced in response to any properly served FOIA request.

Included in the universe of producible Secret Service records are visitor logs. Visitor logs are comprised of records of the visitors to the White House Complex and the Vice President's Residence. Memorandum of Points and Authorities in Support of Defendants' Motion For

2

Summary Judgment ("Defs' Mem.") at 1.[1]  The Secret Service obtains the information necessary to create the visitor logs.  The logs are created by the Secret Service and maintained in the Secret Service's computer system for at least the entire time of their use by the Secret Service.  The visitor logs are created for the express purpose of the Secret Service's protective function, and are relied on by the Secret Service in fulfilling that function.  And when the logs have served their intended purpose, the Secret Service disposes of them.  Clearly, the Secret Service's visitor logs are agency records.

To further this legal conclusion, the Secret Service has historically produced its visitor logs in response to both FOIA requests and discovery requests.  Judicial Watch was the recipient of Secret Service visitor logs on three separate occasions: on or about March 31, 1998,[2] May 10, 2006 and July 7, 2006.  Defendants' assertions of a "longstanding practice" – since 2001 – of transfer and destruction is belied by the fact that records after 2001 have been produced by the Secret Service after conducting searches of the Secret Service's own computer databases.[3]  The

---

[1]    The term "visitor logs" is made up of a variety of different types of records, including but not limited to, Worker and Visitor Entrance System ("WAVES") records, Access Control Records System ("ACR") records and the Vice President's Residence ("VPR") records and logs.  For purposes of this amicus brief, Judicial Watch will use the general term "visitor logs" to encompass all such records and logs, unless otherwise stated.

[2]    Judicial Watch received White House visitor logs as a result of a subpoena in the case of *Alexander v. FBI*, Civil Case No: 96-2123 (RCL).

[3]    In Judicial Watch's litigation against the Secret Service, the initial assertion was that the Secret Service had a "longstanding practice" of transferring records to the White House every 30 to 60 days.  *See* Declaration of Kathy J. Lyerly at ¶ 10, attached as Exhibit 1 hereto.  Perhaps only after realizing that the practice could not be too "longstanding" did the Secret Service begin to qualify its assertion with "since at least 2001."  However, even the qualification fails, since the records received by Judicial Watch in May and July of 2006 contained visitor logs from 2001 and 2004.  Defendants statement is wrong.

fact that the Secret Service's history and practice has been one of production and release, further demonstrates that the visitor logs are agency records.

Applying the law of this Circuit, as well as the actions and history of the Secret Service's production of visitor logs, safeguards not only FOIA itself, but important constitutional principles – namely, that the Executive cannot unilaterally change the law or rewrite history. Despite the furor with which Defendants presented their constitutional argument, the only crisis presented in this case is Defendants' motion for summary judgment. Running roughshod through the separation of powers doctrine, Defendants attempt to elevate the Executive to a position of power that would trump both Congress and the courts. Defendants' motion for summary judgment must be denied.

## ARGUMENT

### I.    The Secret Service's Visitor Logs Are Agency Records Subject to FOIA.

The U.S. Supreme Court has defined "agency records" as those records (1) created or obtained by an agency, and (2) in the agency's control. *See United States Department of Justice v. Tax Analysts*, 492 U.S. 136, 144-46 (1989). Oddly, Defendants do not specifically address the first prong: creation of the records. Rather, Defendants assert only that WAVES records are generated by information supplied by White House personnel. Defs' Mem. at 21. While Defendants attempt to sidestep the issue of the creation of the records, their argument is unconvincing. Even if all of the information utilized in the creation of the visitor logs was provided by White House personnel, it does not change the fact that the actual records are created

by the Secret Service.[4]  Perhaps it is the obviousness of this fact that causes Defendants to refrain

from making a legal argument that the Executive created the visitor logs.

The primary focus of Defendants' argument is control of the visitor logs.[5]  Defendants

assert that it is the President and Vice President who control the visitor logs – that the

"information in question is quintessentially Presidential and Vice Presidential."  Defs' Mem. at

24.  Defendants' argument could not be further from the truth.

In order to demonstrate "control," four factors have been established: (1) intent to retain

or relinquish control of the records; (2) ability to use and dispose of the records; (3) degree of

reliance on the records; and (4) degree the records were integrated into the agency's system.  *See*

*Tax Analysts v. U.S. Dep't of Justice*, 845 F.2d 1060, 1069 (D.C. Cir. 1988), *aff'd on other*

*grounds*, 492 U.S. 136 (1989).  These factors are analyzed under a "totality of the circumstances"

basis and, not as a checklist of requirements.  *See Bureau of Nat'l Affairs, Inc. v. U.S. Dep't of*

*Justice*, 742 F.2d 1484, 1492-93 (D.C. Cir. 1984).  Therefore, it is possible for the Secret

Service's visitor logs to be agency records without each factor being present.

Defendants first discuss whether the visitor logs were integrated into the Secret Service's

---

[4]    It is more likely that the information supplied by White House personnel for the creation of the visitor logs comes from the prospective visitors themselves and is only funneled through White House personnel.  Personal information such as social security numbers and birth dates surely must originate with the individual visitor himself.  Therefore, White House personnel are at best conduits for the information.

[5]    Defendants assert that "the most important factor is the first – that is, what entity exercises 'control' over a particular record."  Defs' Mem. at 20.  Interestingly, Defendants do not provide legal authority for this assertion.  In *Consumer Fed. of America v. Dep't of Agriculture*, 455 F.3d 283, 288 (D.C. Cir. 2006), the Court employed the *Bureau of National Affairs* factors: creation, location or possession, control, and use, deciding that "use is the decisive factor." Defendants' attempt to force a rigid control analysis is directly contrary to the holding of *Consumer Federation of America*.

files. Defs' Mem. at 20-22. Rather than harken back to the detailed factual descriptions of how the information pertaining to a visitor is used by the Secret Service, as provided in Defendants' many affidavits, Defendants rely on circular reasoning: the visitor records are not integrated into the Secret Service's files because the President and Vice President control the records. *Id.* at 20-21. However, this point begs the issue: the Executive controls the records because the Secret Service does not integrate the records because the Executive controls the records. This is nothing more than a logical fallacy.[6]

In Defendants' own sworn affidavits, the process by which information is obtained by the Secret Service and then input into its computer systems to generate visitor records is described in detail. For example, in the Third Declaration of Paul S Morrissey ("Third Morrissey Decl."), Mr. Morrissey describes how the information about prospective visitors is provided to the Secret Service electronically, where it is later transferred to the WAVES Center (operated by the Secret Service) and used to confirm the visitor's appointment. Third Morrissey Decl. at ¶ 11. The Secret Service uses one open field in the log to add additional comments from the background checks performed prior to the visit. *Id.* at ¶ 13. The logs are updated electronically once the visitor exits the White House Complex. *Id.* at ¶ 15. All of this information is input, updated and maintained on Secret Service computer databases. *Id.* at ¶¶ 9-15.

These facts, presented in Defendants' own sworn affidavits, demonstrate that the visitor

---

[6]     Defendants' reliance on *United We Stand America, Inc. v. IRS*, 359 F.3d 595, 600 (D.C. Cir. 2004), a case in which Judicial Watch served as counsel for the plaintiff, for the proposition that the Secret Service must have "exclusive control" over the visitor logs in order to deem them agency records is erroneous. Defs' Mem. at 20-21. The Court's statement about "exclusive control" only reflected "considerations that underlie the second factor: the agency's ability to use or dispose of the records as it sees fit." *United We Stand America*, 359 F.3d at 600.

records were integrated into the Secret Service's files. As a further factual demonstration of integration, the Secret Service historically has produced visitor logs in other cases. In *Judicial Watch, Inc. v. U.S. Secret Service*, Civil Case No. 06-0301 (JGP), the Secret Service searched its *own* computer databases and produced visitor logs as a result of that search. This fact would be impossible if the visitor records had not been integrated into the Secret Service's files.

The second factor Defendants discuss is whether the Secret Service has disposal authority over the visitor logs. Defendants assert that because the Secret Service has, at least since 2001, purportedly transferred visitor logs to the White House Office of Records Management and subsequently erased its files, the Secret Service does not have disposal authority over the visitor logs. Defs' Mem. at 23. Even if it were true that the Secret Service's practices of transfer and erasure were consistent, and subsequent productions to Judicial Watch make this unlikely, it is odd that Defendants first describe the Secret Service's method of disposal and then conclude it has no disposal authority. The Secret Service's practice of transfer and erasure *is* its disposal of the visitor logs. After the records have served the purpose for which they were created, the Secret Service disposes of them.[7] It is irrelevant that the Executive then retains the disposed visitor logs for some other purpose.

Defendants' reliance on the self-serving and legally questionable May 2006 Memorandum of Understanding ("MOU") is misguided. First, Defendants provide no legal basis for the authority of the MOU. Surely, Defendants do not suggest that the Executive can simply

---

[7]     Prior to the May 2006 Memorandum of Understanding between the White House Office of Records Management and the Secret Service Records Management, there was no indication that the transfer and erasure of visitor logs by the Secret Service was anything other than a voluntary disposal method.

change the law with a unilateral memorandum.[8]  This is precisely why the U.S. Congress makes

the law.  *See infra* § II.  Second, the authority of the MOU itself is belied by other facts, namely,

that almost two months after the MOU was signed, the Secret Service produced a second set of

visitor logs to Judicial Watch.  *See Judicial Watch, Inc. v. U.S. Secret Service*, Civil Case No. 06-

0310 (JGP).

The last "control" factor Defendants address is the Secret Service's use of the visitor logs.

Defs' Mem. at 23-27.  Defendants assert that because the visitor logs have a limited purpose –

"only to facilitate the agency's protective function" – and the Secret Service has no continuing

interest in the visitor logs, the logs are "quintessentially Presidential and Vice Presidential."

Defs' Mem. at 23-24.  Defendants have once again ignored the facts.

The visitor logs are created for one purpose and one purpose only: to gather information

about prospective White House Complex visitors for the purpose of determining the visitor's

admissibility to the Complex.  *See e.g.,* Third Declaration of Paul S. Morrissey at 12.  The Secret

Service then maintains that information in its computer files.  The information takes the form of

visitor logs when the visitor enters and exits the White House Complex.  After the visitor has

been cleared and the visit completed, the Secret Service has fulfilled its protective mission and it

no longer needs the visitor logs – the purpose of the logs has been fulfilled.  Clearly, this

demonstrates that the Secret Service uses and relies on the visitor logs.

Defendants even state that the visitor logs are used by the Secret Service "only to

facilitate the agency's protective function, and the Secret Service uses the information for that

_____

[8]    In fact, the law appears to be contrary to Defendants' reliance on the MOU.  *See American Historical Ass'n v. Peterson*, 876 F. Supp. 1300 (D.D.C. 1995).

8

purpose." Defs' Mem. at 24. This is precisely the point. The visitor logs have been used by the Secret Service for the very reason for which they were created: to help protect the White House Complex. It is the *only* reason the Secret Service uses the logs, because it is the *only* reason the logs were created. That the Executive maintains the disposed of logs for some other purpose does not affect the primary reason the logs were created and used.

In an attempt to bolster their argument, Defendants assert that the Court erred in its holding in *Washington Post v. Dep't of Homeland Security*, 459 F. Supp. 2d 61 (D.D.C. 2006), *vacated on appeal*, No. 06-5337 (D.C. Cir. 2007). Defendants base this assertion on their apparent distaste for the Court's "use" analysis. That analysis focused on the purpose of the WAVES records and the use of the records by the Secret Service. The court held that "the Secret Service's use of the WAVES records encompasses the entire scope of their purpose," thereby fulfilling the "nexus" requirement referred to in *Bureau of Nat'l Affairs*. *Id.* at 71. In *Bureau of Nat'l Affairs*, the Court considered whether there was "some nexus between the agency's work and the records." 742 F.2d at 1491. In this case, it is clear that there is a substantial nexus between the Secret Service's work and protective mission and the visitor records. Any effort to rebut this obvious nexus analysis is strangely missing from Defendants' argument.[9]

---

[9]     Defendants make anther bold assertion regarding this decision. Defendants state that "the court of appeals has stressed that the determinative inquiry is whether a non-FOIA entity – such as the President, the Vice President, or Congress – has clearly manifested its intent to control the records and circumscribed their use by the agency." Defs' Mem. at 25. Defendants offer no legal authority for this statement. In fact, Defendants' assertion is contrary to law. In *Kissinger v. Reporters Comm. For Freedom of the Press*, 445 U.S. 136, 157 (1980), a case relied on by Defendants for other propositions, the Court clearly considered a number of factors in determining whether the records at issue were agency records, including who generated the papers, whether the papers entered the State Department files, and who used the papers.

**II.  Constitutional Principles Mandate Denying Defendants' Motion For Summary Judgment.**

Defendants assert that, in the alternative, the Court should grant the motion for summary judgment in order to avoid "serious constitutional problems." Defs' Mem. at 27.  The serious constitutional problems anticipated by Defendants range from revealing the "nature of initiatives under consideration," to impeding the ability of the President and Vice President to receive "full and frank submissions" and "confidential information from many sources." Defs' Mem. at 29-30.  Defendants' description of impending doom would strike fear in the heart of any citizen, if the cause of all of these constitutional problems was something more significant than visitor logs.[10]

Defendants are absolutely correct in their assertion that neither the President nor the Vice President are subject to FOIA.  Defs' Mem. at 28.  Presidential and Vice Presidential records, and the records of their staff members and closest advisors, are not agency records for the purpose of FOIA.  *Id.*  However, as discussed above, the records at issue in this lawsuit are not Presidential or Vice Presidential records – they are records of the Secret Service.  *See supra*, § I.  Therefore, there is no constitutional crisis.

---

[10]    Defendants assert that producing the visitor logs will: (1) chill confidential communications between the President and Vice President and outside sources; (2) chill the frankness of advice received from sources; and (3) reveal the nature of initiatives under consideration.  Defs' Mem. at 28-30.  These scenarios seem highly unlikely.  First, the visitor logs are not communications.  They are comprised of names, dates, and times.  There is nothing communicative about the information.  Second, Defendants do not attest in any of their affidavits that the President or Vice President have received fewer visitors to the White House Complex or diminished advice from outside sources because of the availability of visitor logs.  Judicial Watch received visitor logs from the Secret Service in May and July of 2006.  The releases were made very public and do not appear to have harmed presidential decision-making.  Lastly, Defendants themselves admit that the visitor logs reveal very little information.  *See e.g.,* Declaration of Claire M. O'Donnell at ¶ 10.

Indeed, granting Defendants' motion for summary judgment would create a legal crisis.

Defendants are proposing that any record that in any way involves the President or Vice

President – even a record historically treated as agency record – is a presidential record and can

be removed from the public sphere. In addition to contradicting clearly established statutory law,

this is nothing short of the Executive unilaterally eviscerating legislative enactments and judicial

decisions. It is Defendants who would violate the separation of powers.

The Presidential Records Act ("PRA") 44 U.S.C. § 2201(2)(A) defines presidential

records as:

> [D]ocumentary materials, or any reasonably segregable portion thereof, created or
> received by the President, his immediate staff, or a unit or individual of the
> Executive Office of the President whose function is to advise and assist the
> President, in the course of conducting activities which relate to or have an effect
> upon the carrying out of the constitutional, statutory, or other official or
> ceremonial duties of the President. [The term includes] any documentary
> materials relating to the political activities of the President or members of his
> staff, but only if such activities relate to or have a direct effect upon the carrying
> out of constitutional, statutory, or other official or ceremonial duties of the
> President.

44 U.S.C. § 2201(2)(A).

A major exception to the above definition is that agency records are not considered

presidential records. The PRA explicitly states that the presidential records do "not include any

documentary materials that are (i) official records of an agency (as defined in section 552(e) of

title 5, United States Code." 44 U.S.C. § 2201(2)(B). The D.C. Circuit confirmed this in

*Armstrong v. Executive Office of the President*, 1 F.3d 1274, 1292 (D.C. Cir. 1993), adding that

"Congress perceived the potential definitional overlap between agency records under the FOIA

and Presidential records under the PRA, and explicitly provided that the PRA would apply only

to records that "fall outside the scope of the FOIA because they are not agency records." The D.C. Circuit further stated that Congress was aware of separation of powers concerns implicated by legislation that regulates the daily activities of the President, but that it also "sought to provide a clear limitation on just which materials the President could legitimately assert control over and **to preserve the pre-existing body of FOIA law governing the disclosure of government agency records.**" *Id.* (emphasis added).

As discussed above, until very recently, the Secret Service acted as though it recognized this clear statement of the law and Congressional intent. For example, despite delays in producing documents, the Secret Service produced visitor logs to Judicial Watch on May 10, 2006. *See Judicial Watch v. Secret Service*, Civil Action No. 06-0310 (JGP). This production occurred pursuant to a stipulation signed by the parties on April 25, 2006 in which the Secret Service agreed to produce any and all documents responsive to Plaintiff's January 20, 2006 Freedom of Information Act request, without redactions or claims of exemption. The MOU between the White House Office of Records Management ("WHORM") and the Secret Service was signed on May 17, 2006, yet on July 7, 2006, the Secret Service released more visitor logs to Judicial Watch. Thus, despite the MOU's claim that the records were presidential records under the exclusive control of WHORM, the Secret Service continued to act as though the records were agency records and that it was required to produce them.

Defendants also cite a September 13, 2006 letter from Shannen W. Coffin, Counsel to the Vice-President, to Don Personette, Chief Counsel to the Secret Service, in an apparent attempt to reaffirm the May 17, 2006 MOU. However, the letter only undermines Defendants' claim that the records at issue are presidential records. *See* Exhibit D to Third Morissey Decl. Alluding to

a "consistent practice of exercising exclusive control over any and all documents and information

held by the USSS [Secret Service] to visitors to the VPR [Vice President's Residence]," Coffin's

letter ignores the production that Secret Service made to Judicial Watch barely two months

before.  It is more likely that the letter was written to scold the Secret Service for, inadvertently

or otherwise, undermining Defendants' on-going attempt to re-write the Presidential Records Act

by expanding the definition of "presidential records" far beyond its original meaning and

simultaneously limiting the FOIA's broad definition of agency documents.

Particularly disturbing to Judicial Watch is Defendants' reliance on *Cheney v. U.S.

District Court*, 542 U.S. 367 (2004) for its claim that any record relating to the President or Vice

President in any way is a presidential record.  Contrary to Defendants' assertion, *Cheney* does not

grant them the power they seek.  First, the *Cheney* holding applied to a narrow set of

circumstances.  The specific question before the Court in *Cheney* pertained to discovery orders

and whether the Vice President could obtain mandamus relief from those orders; the statute at

issue was not FOIA.  Nowhere in *Cheney* did the Supreme Court hold that the President or Vice

President were entitled to run roughshod over clearly established law.  Rather, the Court held that

the separation of powers analysis in *Fitzgerald* should "inform the court of appeals' evaluation of

a mandamus petition involving the President or the Vice President."  *Cheney*, 542 U.S. at 382.

This narrow holding is far too thin a reed to support Defendants' claim that any record relating in

any way to the President or Vice President are exempt from FOIA.

Lastly, Judicial Watch respectfully submits that in addition to attempting to classify as

presidential records documents that are clearly agency records, Defendants' actions in this case

show that it is attempting to, in effect, extend the reach of the presidential communications

13

privilege far beyond that which courts have previously sanctioned.  Defendants claim that the disclosure requested by CREW "would reveal a composite of sensitive details regarding the operation of the Presidency and Vice Presidency, and would significantly and impermissibly encroach on the confidential communications of the President, the Vice-President and their staffs."  *See* Defs' Mot. at 18.

The presidential communications privilege is a subcategory of executive privilege.  It applies to documents solicited and received by *the President or his immediate advisors* in the Office of the President.  *Judicial Watch, Inc. v. U.S. Department of Justice*, 365 F.3d 1108, 1123 (D.C. Cir. 2004).  In that case, the D.C. Circuit specifically rejected a "functional approach" to application of the presidential communications privilege, declaring that the mere fact that an agency's sole purpose is to advise and assist President is insufficient to invoke the privilege.  *Id.* at 1121-22.  Rather, the Court recognized the danger of allowing the presidential communications privilege to be applied beyond an inner circle of close presidential advisors and asserted that the privilege needed to be "construed as narrowly as is consistent with ensuring that the confidentiality of the President's decision making process is adequately protected."  365 F.3d at 1114, 1116 (quoting *In Re Sealed Case*, 121 F.3d at 752).  The Court concluded that "extension of the privilege to internal agency documents that never make their way to the Office of the President on the basis that the documents were created for the sole purpose of advising the President on a non-delegable duty is unprecedented and unwarranted."  *Id.* at 1117.

In this case, leaving aside the fact that is it the Secret Service that actually creates visitor logs, the individuals who request the creation of those records include individuals who are not the President, the Vice-President, or his immediate advisors.  Defendants assert that the records

14

are requested by "[a]uthorized White House pass holders, including Presidential and Vice Presidential staff." Defs' Mot. at 5. While some of these staffers may be immediate advisors to the President and Vice President, and some of the documents created by their requests might have found their way into the Office of the President or Vice-President, it is by no means clear that all of them are part of the immediate circle of close presidential advisors or that all of the logs have found their way into the Office of the President or Vice-President. By refusing to process CREW's FOIA request, Defendants are creating a blanket exemption for these documents without bothering to make a determination as to whether they were, in fact, requested by the President, the Vice-President, or their immediate advisors.

## **CONCLUSION**

For the foregoing reasons, Judicial Watch respectfully requests that the Court deny Defendants' motion for summary judgment.

Dated:  July 13, 2007

Respectfully submitted,

/s/ Meredith L. Di Liberto
D.C. Bar No. 487733
/s/ Paul J. Orfanedes
D.C. Bar No. 429716
/s/ Jason B. Aldrich
D.C. Bar No. 495488
JUDICIAL WATCH, INC.
501 School Street, S.W.
Suite 500
Washington, D.C.  20024
(202) 646-5172

*Counsel for Amicus Curiae*

# EXHIBIT 1

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JUDICIAL WATCH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )      Civil Action No. 06-310 (JGP) |
| UNITED STATES SECRET SERVICE, | ) |
| | ) |
| Defendant. | ) |

**DECLARATION OF KATHY J. LYERLY
SPECIAL AGENT IN CHARGE, LIAISON DIVISION AND
FREEDOM OF INFORMATION AND PRIVACY ACTS OFFICER,
UNITED STATES SECRET SERVICE**

I, Kathy J. Lyerly, hereby make the following declaration:

     1.      I am the Special Agent in Charge of the Liaison Division and the Freedom of

Information and Privacy Acts (FOI/PA) Officer for the United States Secret Service (hereinafter

Secret Service), which is a component of the Department of Homeland Security (DHS). I have

been the Secret Service FOI/PA Officer since December 28, 2003, and have been employed with

the Secret Service as a Special Agent (GS-1811) since October 26, 1987.

     2.      DHS regulations, Title 6, Code of Federal Regulations, Section 5.4, and Appendix

A, II(I)(3), vest authority in the FOI/PA Officer, Secret Service, to make initial determinations as

to whether to grant Freedom of Information Act (FOIA), 5 U.S.C. § 552, requests for Secret

Service records (68 FR 4056, 4058, and 4069).

     3.      As the Secret Service's FOI/PA Officer, I am familiar with plaintiff's FOIA

request to the Secret Service. Under my direction, the Secret Service conducted a search for

documents responsive to plaintiff's request. That search produced two records, both of which

were released in full without redactions or claims of exemptions. A chronological description of

the correspondence in this matter and the processing of plaintiff's FOIA request is set forth

below.

4.      By letter to the Secret Service dated January 20, 2006, and received January 23,

2006, plaintiff submitted a FOIA request for records "concerning, relating to, or reflecting . . .

[a]ll White House visitor logs from January 1, 2001 to present that reflect the entries and exit(s)

of lobbyist Jack Abramoff from the White House."

5.      By letter dated February 2, 2006, I acknowledged receipt of plaintiff's FOIA

request and advised plaintiff that a search for records responsive to the request was being

conducted.

6.      There are two interrelated systems – collectively termed the White House Access

Control System – for controlling and monitoring access to the White House Complex: the

Worker and Visitor Entrance System ("WAVES") and the Access Control Records System

("ACR").

7.      ACR records consist of records generated when a pass holder, worker, or visitor

swipes his or her permanent or temporary pass over one of the electronic pass readers located at

entrances to and exits from the White House Complex. ACR records include information such

as the pass holder's name and badge number, the time and date of the swipe, and the post at

which the swipe was recorded.

8.      WAVES records consist of records generated when information is submitted to

2

the Secret Service about workers and visitors whose business requires their presence at the White

House Complex. WAVES records include information additional to that in the ACR records.

9.     In response to plaintiff's request, the FOI/PA Office conducted a search for

responsive information. This search was conducted under the direction of the Secret Service's

Presidential Protective Division by personnel who conduct FOIA searches as part of their regular

responsibilities. The Secret Service searched both the ACR records and the WAVES records for

any and all records responsive to plaintiff's FOIA request.

10.     It has been the longstanding practice of the Secret Service to transfer WAVES

records on CD-ROM to the White House every 30 to 60 days. Except as noted in paragraph 11

below, once the Secret Service transferred the WAVES records, the Secret Service ensured that

those records were erased from its computer system.

11.     In October 2004, at the request of the National Archives and Records

Administration, the Secret Service began temporarily retaining its own copy of the WAVES

records that it transferred to the White House. As such, the Secret Service has in its possession

WAVES records dating back only to October 2004.

12.     ACR records are stored in a searchable database. Records are searchable by

visitor name. In this case, the Secret Service searched the ACR database by searching for records

generated from January 1, 2001 to the date of the search that had the name "Jack Abramoff" in

the visitor field. The Secret Service does not keep ACR records anywhere other than in this

searchable database.

13.     WAVES records are stored in a searchable form on CD-ROMs. Records are

3

searchable by visitor name. In this case, the Secret Service explored the WAVES CD-ROMs by searching for records generated from October 2004 to the date of the search that had the name "Abramoff" in the visitor field. As noted in paragraph 11, the Secret Service only has in its possession WAVES records dating from October 2004.

14.    The Secret Service's search of the ACR records produced two pages of records responsive to plaintiff's FOIA request. These records show that Mr. Abramoff visited the White House Complex on March 6, 2001 and January 20, 2004. The two pages of ACR records responsive to plaintiff's FOIA request have slightly different formats because the ACR system changed somewhat between 2001 and 2004.

15.    The Secret Service's search of the WAVES records maintained by the Secret Service produced no WAVES records responsive to plaintiff's FOIA request.

16.    There are a variety of reasons why ACR records are not comprehensive as to entries and exits. For example, guests who visit the complex in a prearranged group for an official function or reception may not appear on the ACR records. In some of those instances visitors are granted entry without going through the turnstiles.

17.    No other documents responsive to plaintiff's FOIA request were found in the search.

18.    No document located in response to plaintiff's request has been withheld in part or in whole.

19.    Pursuant to the terms of a joint stipulation and agreed order, on May 10, 2006, defendant produced, without redactions or claims of exemptions, all documents located in response to plaintiff's January 20, 2006 FOIA request.

4

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing statements are true and correct to the best of my knowledge and belief.

_5/16/06_
Date

_Kathy J. Lyerly_
Kathy J. Lyerly
Special Agent in Charge, Liaison Division and
Freedom of Information and Privacy Acts Officer
United States Secret Service

5

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON | ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | Civil Action No. 06-01912 (JGP) |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

**[PROPOSED] ORDER**

Upon consideration of Plaintiff's Motion For Leave to File *Amicus Curiae* Brief, any

opposition thereto, and the entire record herein, it is hereby

ORDERED that:

1.      The motion is granted.

2.      Judicial Watch's *amicus curiae* brief is hereby filed.

SO ORDERED.

DATE: _____              _____

                                   The Honorable John Garrett Penn
                                   U.S. District Judge