**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, et al.,<br><br>Defendants. | CIVIL ACTION NO. 1:06-cv-01912-RCL |

**DEFENDANTS' MOTION FOR STAY PENDING APPEAL**

The defendants, by their undersigned counsel, hereby respectfully move that implementation of this Court's Order of December 17, 2007 (docket #45), be stayed pending resolution of defendants' appeal therefrom.

The grounds for this motion are set forth in the accompanying Memorandum of Points and Authorities in Support of Defendants' Motion for Stay Pending Appeal.

In accordance with Local Rule 7(m), undersigned counsel for the defendants has conferred with counsel for the plaintiff regarding the relief sought in this motion, and counsel stated that plaintiff intended to oppose the motion.

Dated: December 19, 2007

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

CARL J. NICHOLS
Deputy Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO, D.C. Bar 418925
Assistant Director

/s/ W. Scott Simpson
_______________________________
W. SCOTT SIMPSON, Va. Bar 27487
Senior Trial Counsel

Attorneys, Department of Justice
Civil Division, Room 7210
Post Office Box 883
Washington, D.C. 20044
Telephone: (202) 514-3495
Facsimile: (202) 616-8470
E-mail: scott.simpson@usdoj.gov

COUNSEL FOR DEFENDANTS

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,

Plaintiff,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, et al.,

Defendants.

CIVIL ACTION NO.
1:06-cv-01912-RCL

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR STAY PENDING APPEAL**

INTRODUCTION

Defendants have today appealed from this Court's Order and Memorandum Opinion of December 17, 2007, in which the Court held that certain records are subject to the Freedom of Information Act ("FOIA") and directed defendants to release all responsive, non-exempt records within twenty days. Defendants seek appellate review of the Order because they believe the Court erred in concluding that records subject to the legal custody and control of the President and Vice President under the Presidential Records Act ("PRA") — and whose disclosure could impair the effective functioning of the Presidency and the Vice Presidency — must nevertheless be processed and disclosed by the United States Secret Service. The Court's Order raises serious constitutional implications concerning the autonomy of the Presidency and Vice Presidency under the Constitution and the confidentiality of their communications.

To preserve the Government's rights, and to avoid irreparable harm to the Presidency and Vice Presidency as well as to the Secret Service, defendants respectfully request that the December 17 Order be stayed pending resolution of the appeal. A stay is justified under each of the factors that the Court must consider. First, the President, the Vice President, and the Secret Service face the prospect of immediate irreparable harm if a stay is denied. Most notably, producing the requested records would foreclose any meaningful opportunity to challenge the compelled production on appeal. Once the disclosure occurred, it could not be undone. Also, in absence of a stay, the Secret Service would be required — perhaps unnecessarily, depending on the outcome of the appeal — to search for and process the requested records, some of which exist only on paper, and to seek the input of Presidential and Vice Presidential personnel regarding the applicability of FOIA exemptions, thus distracting such personnel from assisting the President and Vice President in the performance of their duties.

In contrast, a stay would do no significant harm to the plaintiff, nor disserve any public interest that is safeguarded by the FOIA. The purpose of the FOIA is to shed light on an agency's performance of its duties. The records sought here, however, would reveal the conduct of the Presidency and Vice Presidency — which, in fact, is plaintiff's avowed purpose in seeking them.

Finally, the merits of defendants' legal arguments favor entry of a stay. Defendants have presented serious and substantial arguments in support of their position that the records sought are not agency records under FOIA, but are Presidential and Vice Presidential records governed by the PRA. Defendants respectfully submit that the Court's Memorandum Opinion in this case fails to recognize the President's and Vice President's assertion of control over the subject records and the extent of their actual control, understates the role of Presidential and Vice Presidential

personnel in creating the records, and fails to give due weight to the principle of constitutional avoidance.

An order similar to the December 17 Order in this case — compelling the release of Vice Presidential visit records — was entered in another case in October 2006. See Washington Post v. Department of Homeland Security, 459 F. Supp. 2d 61 (D.D.C. 2006), vacated, No. 06-5337 (D.C. Cir. Feb. 27, 2007). The D.C. Court of Appeals granted the Government's motion for stay in that case, and the same stay should be entered here. See Washington Post v. Department of Homeland Security, No. 06-5337 (D.C. Cir. Nov. 1, 2006).

For all of these reasons, as elaborated below, defendants' motion for a stay pending appeal should be granted.

ARGUMENT

The propriety of a stay pending appellate review turns on "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." Cuomo v. Nuclear Regulatory Comm'n, 772 F.2d 972, 974 (D.C. Cir. 1985) (citing Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977)); see Hilton v. Braunskill, 481 U.S. 770, 776 (1987). These factors are not prerequisites to be met, but rather considerations to be balanced. Thus, "[a] stay may be granted with either a high probability of success and some injury, or vice versa." Cuomo, 772 F.2d at 974. Where the movants have established substantial irreparable harm and the balance of harms weighs heavily in their favor, they need only raise "serious legal questions going to the merits" to obtain a stay pending appeal. Population Inst. v.

McPherson, 797 F.2d 1062, 1078 (D.C. Cir. 1986) (quoting Washington Metro. Area Transit Comm'n, 559 F.2d at 844); see Providence Journal Co. v. FBI, 595 F.2d 889, 890 (1st Cir. 1979) (where "the denial of a stay will utterly destroy the status quo, irreparably harming appellants, but the granting of a stay will cause relatively slight harm to appellee, appellants need not show an absolute probability of success in order to be entitled to a stay"). Under these standards, a stay pending appeal is warranted in this case.

## I. The President, Vice President, and Secret Service Would Suffer Certain and Immediate Irreparable Harm in Absence of a Stay

Compliance with the Order of December 17, 2007, would, without question, irreparably harm the President and Vice President, as well as the Secret Service. The records in question document the activities and official functions of these officers and their staffs, who are assigned the authority and duty to preserve these records under the Presidential Records Act, 44 U.S.C. § 2207. See Declaration of Philip C. Droege ¶¶ 3, 12 (May 23, 2007) (Attachment 2 to docket #29) [hereinafter Droege Decl.]; Declaration of Claire M. O'Donnell, Assistant to the Vice President and Deputy Chief of Staff, Office of the Vice President ¶¶ 8, 9, 22 (May 23, 2007) (Attachment 3 to docket #29) [hereinafter O'Donnell Decl.]. Accordingly, the Government respectfully continues to maintain that the records in question are under the legal custody and control of the President and Vice President, exclusive of the Secret Service. Compelled release by the Secret Service of any records determined not to fall within any FOIA exemption would deprive the President, Vice President, and Secret Service of a meaningful opportunity to contest on appeal this Court's determination that the records at issue are "agency records" under FOIA; any disclosure pursuant to the Court's Order, once made, could not be undone. That prospect

constitutes irreparable harm and militates in favor of a stay. See Providence Journal Co., 595 F.2d at 890 (concluding that irreparable harm exists where the failure to enter a stay will irrevocably destroy the status quo).

Subjecting the records in question to immediate disclosure under FOIA would also result in irreparable harm to the President and Vice President by diverting their staffs from their duties. As noted in the Memorandum Opinion of December 17, 2007, some of the subject records may be covered by "the government attorney-client privilege, the government attorney work product protection, the presidential communications privilege, the state secrets privilege, [or] the deliberative process privilege." See Memorandum Opinion (docket #44) at 39 (quoting Baker & Hostetler LLP v. Department of Commerce, 473 F.3d 312, 321 (D.C. Cir. 2006)) [hereinafter Memo. Op.]. Determining the applicability of any such privilege to the record of a given visit would, however, require knowledge of the purpose of the visit, the roles of the persons involved, and the nature of the discussion — knowledge that the Secret Service is unlikely to possess on its own. Thus, complying with the Order of December 17 would require Presidential and Vice Presidential staff to assist the Secret Service in determining the applicability of FOIA exemptions to the subject records, thus necessarily diverting them from their duties to support the President and Vice President in the performance of their official duties.

The FOIA does not apply to the President and Vice President for the very reason that Congress wanted to avoid infringing upon the President and Vice President's ability to perform their important official functions. See Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 156 (1980); Armstrong v. Executive Office of the President, 1 F.3d 1274, 1292 (D.C. Cir. 1993); Meyer v. Bush, 981 F.2d 1288, 1295 (D.C. Cir. 1993). Yet the Court's Order

of December 17 effectively saddles these officers and their staffs with immediate obligations under the FOIA, intruding into the Presidency and Vice Presidency, and impairing their ability to perform their duties effectively. Such an "improper intrusion" into the workings of a constitutional organ of government constitutes another harm that supports entering a stay pending appeal. See INS v. Legalization Assistance Project, 510 U.S. 1301, 1306 (1993); see also Cheney v. United States District Court, 542 U.S. 367, 388 (2004) (noting that the Vice President does not bear the burden of "critiquing . . . unacceptable discovery requests line by line"). The Court should allow defendants to pursue their right to appeal the December 17 Order on the issue of whether the FOIA even applies to the records at issue, before forcing Presidential and Vice Presidential staff to review visitor records for potentially applicable privileges.

## II. The Injury to Defendants and the Presidency and Vice Presidency Far Outweighs Any Potential Harm to Plaintiff or the Public Interest

The entirely speculative prospect of any legally cognizable harm to others, or to the public interest, also militates in favor of a stay. "An order maintaining the status quo is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury on the movant." Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 844 (D.C. Cir. 1977). That is the situation here.

As noted in defendants' motion for summary judgment, plaintiff seeks these records not to understand the internal workings of a federal agency — the Secret Service — but to examine the "influences" to which the President and Vice President "ha[ve] been subject." See Complaint ¶ 48. Specifically, plaintiff seeks to discover whatever "influence that conservative Christian

leaders have, or attempt to have, on the President." Id. ¶ 29. Thus, in alleging that it is harmed by defendants' failure to provide the records, plaintiff alleges only that that failure has deprived it of "a critical part of the evidentiary record concerning the influences to which the Bush administration is subject." Id. ¶ 8.

Defendants fully acknowledge the importance of the public interest served by the Freedom of Information Act. But when Congress enacted the FOIA, it recognized that substantial countervailing interests require delaying the disclosure of Presidential and Vice Presidential records, so as to preserve the effective functioning of the Presidency and Vice Presidency. See Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 156 (1980) (term "agency" under FOIA does not encompass "the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President.") (quoting H.R. Conf. Rep. No. 93-1380, at 15 (1974)); see also Armstrong v. Executive Office of the President, 90 F.3d 553, 556 (D.C. Cir. 1996) (PRA records "are to be made publicly available five years after [the President or Vice President] leaves office, except that national defense and certain other information is to be made available no later than 12 years after the end of a [P]resident's [or Vice President's] term."). Thus, the public interest protected by the FOIA "is that in '[o]fficial information that sheds light on an agency's performance of its statutory duties.'" Quiñon v. FBI, 86 F.3d 1222, 1231 (D.C. Cir. 1996) (emphasis added) (quoting Department of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773 (1989)); see Computer Prof'ls for Soc. Responsibility v. Secret Service, 72 F.3d 897, 904 (D.C. Cir. 1996) ("the basic purpose of the [FOIA] [is] to open agency action to the light of public scrutiny").

The records at issue here, however, shed little if any light on the activities of the Secret Service. See Quiñon, 86 F.3d at 1231 ("Disclosure of information that 'reveals little or nothing about an agency's own conduct' does not further the public interest envisaged by FOIA.") (quoting Department of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. at 773). As plaintiff openly acknowledges, the purpose of its FOIA request is to expose to public scrutiny the business conducted by the President, the Vice President, and their staffs, not the performance of the Secret Service. See Complaint ¶¶ 8, 29, 48. Hence, there can be no injury to a legally cognizable public interest under FOIA if the processing or release of the requested records is delayed by a stay pending appeal.

In any event, even if plaintiff could identify a public interest in disclosure of the information it seeks that is legally protected (even in principle) by the FOIA, it is entirely speculative whether any harm would in fact befall that interest if defendants' motion for a stay is granted. Such "speculative harm [can]not outweigh the immediate harm" that the Secret Service and the Vice President would suffer "in the absence of a stay." Hechinger v. Metropolitan Washington Airports Auth., 845 F. Supp. 902, 910 (D.D.C. 1994); see Standard Havens Prods., Inc. v. Gencor Indus., Inc., 897 F.2d 511, 515-16 (Fed. Cir. 1990); cf. Computer Prof'ls for Soc. Responsibility , 72 F.3d at 905 (the public interest arising out of a requester's "mere desire to review how an agency is doing its job, coupled with allegations that it is not," is "insubstantial" absent evidence of misconduct that the requested records would tend to confirm or refute) (internal quotation marks and citations omitted).

III. Defendants Are Likely To Prevail on the Merits of Their Appeal

Finally, a stay pending appeal is warranted because of the likelihood that defendants will prevail on the merits. As noted above, this standard is satisfied where serious and substantial questions of law exist, as is plainly the case here. Specifically, defendants are likely to prevail on their contention that the records at issue are not "agency records" subject to FOIA. At the very least, defendants have raised a serious question about the status of these records that should be resolved by the Court of Appeals before Presidential and Vice Presidential personnel and the Secret Service are required to divert a substantial amount of time and resources to processing these records.

This Court has correctly found, as it must in light of the evidence presented, that the Secret Service "intends to relinquish control over certain visitor records . . . once a visit is complete." See Memo. Op. at 25. Nevertheless, defendants respectfully submit that the Court has failed, in several respects, to recognize the nature and extent of Presidential and Vice Presidential control over the subject records. First, although the Court's Memorandum Opinion seeks to distinguish United We Stand America, Inc. v. IRS, 359 F.3d 595 (D.C. Cir. 2004), on the basis that no "confidentiality directive" appears on the records in question, see Memo. Op. at 24, the opinion does not acknowledge the fact that the White House and the Office of the Vice President have indicated they provide visitor information to the Secret Service on a confidential basis and only to enable the agency to exercise its protective function. See Droege Decl. ¶ 5; O'Donnell Decl. ¶ 21. The Court's reasoning would effectively require the President and Vice President to assert the confidentiality of visitor information every time such information is provided to the Secret Service. That, however, would be unworkable, and should be unnecessary

where multiple packets of such information are provided each day, usually in electronic form. United We Stand America is not a valid comparison in this regard, given that the record involved there was a single, multi-page memorandum, in which a "confidentiality directive" could easily be included.

Similarly, in finding that the Secret Service has authority to dispose of the records as it sees fit and otherwise controls them, see Memo. Op. at 28, the Memorandum Opinion fails to recognize that both the White House and the Office of the Vice President have expressly asserted exclusive legal control over the subject records. See Droege Decl. ¶¶ 3, 12; O'Donnell Decl. ¶¶ 7, 8, 21. The Secret Service, moreover, expressly recognizes exclusive Presidential and Vice Presidential control over the records. See Third Declaration of Paul S. Morrissey, Deputy Assistant Director, United States Secret Service ¶¶ 18, 37 (May 23, 2007) (Attachment 1 to docket #29) [hereinafter Third Morrissey Decl.]. These assertions of control, and the agency's recognition of such control, are significant because the information contained in these records is quintessentially Presidential and Vice Presidential. These officers necessarily carry out much of their constitutional responsibility by meeting and consulting with visitors, and Congress did not (and constitutionally could not) require the President and Vice President to make their appointment calendars available for immediate public inspection under FOIA.

Further, in relation to the creation of WAVES records, defendants would argue that the Memorandum Opinion understates the role of Presidential personnel. In most instances, the information on prospective visitors is actually entered into the system by a White House pass holder. Id. ¶ 11. That information, usually as typed by the pass holder, then becomes the visitor information in a WAVES record. Id. Visitor information is normally not, as stated in the Court's

opinion, sent to the Secret Service by "email." See Memo. Op. at 22; see also Morrissey Decl. ¶ 11.[1]

Finally, defendants respectfully submit that the Memorandum Opinion fails to give proper weight to the doctrine of constitutional avoidance and the established law that the President and Vice President are not subject to the FOIA. The opinion fails, first, to acknowledge adequately the congressionally- and judicially-recognized interest in the "confidentiality of executive communications." See H.R. Rep. No. 95-1487, at 8 (1978), reprinted in 1978 U.S.C.C.A.N. 5732, 5739. As the Court of Appeals has held, "separation-of-powers concerns" mandate permitting the President, in "making decisions on personnel and policy, and in formulating legislative proposals . . . to seek confidential information from many sources, both inside the government and outside." In re Cheney, 406 F.3d 723, 728 (D.C. Cir. 2005) (en banc). Such confidential, candid communications are needed not only in formulating domestic policy, but also in matters of national security and foreign policy. The Court's only significant reference to these interests is in summarizing the defendants' arguments. See Memo. Op. at 36.

The Memorandum Opinion also underestimates the potential for disclosure of confidential information through the release of visitor information. Although the purpose of a given visit may not be apparent "from the face" of a visitor record, id. at 38, the likely subject

---

[1] Defendants submit, additionally, that the Memorandum Opinion places undue emphasis on the Secret Service's role in providing security for the White House Complex and the Vice President's Residence in general; the opinion states, for example, that the agency conducts background checks to ensure that a visitor does not pose a risk to "anyone in the White House Complex." See Memo. Op. at 20. In reality, the first and foremost purpose of the agency's security-related activities at the Complex and the Residence — and the most significant purpose in relation to this case — is to fulfill its statutorily mandated duty to protect the President, the Vice President, and their immediate families. See Third Morrissey Decl. ¶ 3; 18 U.S.C. § 3056.

matter of the visit and the views being considered by the President and Vice President could well be deduced from the identity and occupation of the visitor and his or her publicly ascertainable views on policy issues. Moreover, that many visitors to the White House Complex and the Vice President's Residence are "repair personnel" or "visiting heads of foreign governments," id., does not obviate the fact that the identities of other visitors — such as specific members of academia or former government officials — would be considerably more revealing.

Additionally, the Court's conclusion that the Government's concerns may be alleviated through "ready recourse" to FOIA's exemptions, id. at 39, runs afoul of the clear precedent holding that FOIA does not apply at all to the President or Vice President. As discussed above, the obligation simply to process plaintiff's FOIA request could interfere with the effective functioning of the Presidency and Vice Presidency. Also, if it were true that FOIA's exemptions adequately safeguarded the ability of the President and Vice President to discharge their official functions, then Congress and the courts would not have recognized the need to exclude them entirely from FOIA's requirements, including the obligation to search for and process records.

Lastly, contrary to the Court's opinion, defendants submit that an interpretation of the FOIA as excluding the subject records is at least "fairly possible." INS v. St. Cyr, 533 U.S. 289, 299-300 (2001). Neither the statute nor the legislative history defines the term "agency records," and its meaning must be determined in each case by applying a multi-factor analysis whose outcome can vary widely depending on the circumstances presented. See Bureau of Nat'l Affairs, Inc. v. Department of Justice, 742 F.2d 1484, 1490 (D.C. Cir. 1984). The ambiguity of the FOIA in this regard is well-illustrated by the differing conclusions of this Court's Memorandum Opinion and the Washington Post decision in relation to certain portions of the test: Judge

Urbina in Washington Post found, for example, that "the Secret Service has a clear intent to relinquish control of [visitor] records," that the ability of the Secret Service to use and dispose of such records as it sees fit is "quite limited," and that "the WAVES records are not integrated into the Secret Service's record system or files," Washington Post v. Department of Homeland Security, 459 F. Supp. 2d 61, 70-71 (D.D.C. 2006), vacated, No. 06-5337 (D.C. Cir. Feb. 27, 2007), whereas this Court found in favor of the defendants only on the first factor.

CONCLUSION

For the foregoing reasons, defendants' motion for stay pending appeal should be granted, and implementation of this Court's Order dated December 17, 2007, should be stayed pending defendants' appeal therefrom.

Dated: December 19, 2007

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

CARL J. NICHOLS
Deputy Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO, D.C. Bar 418925
Assistant Director

/s/ W. Scott Simpson

W. SCOTT SIMPSON, Va. Bar 27487
Senior Trial Counsel

Attorneys, Department of Justice
Civil Division, Room 7210
Post Office Box 883
Washington, D.C. 20044
Telephone: (202) 514-3495
Facsimile: (202) 616-8470
E-mail: scott.simpson@usdoj.gov

COUNSEL FOR DEFENDANTS

***UNITED STATES DISTRICT COURT***
***FOR THE DISTRICT OF COLUMBIA***

| | | |
|---|---|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 06-1912 (RCL)** |
| **UNITED STATES DEPARTMENT OF HOMELAND SECURITY, et al.,** | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter comes before the Court on **Defendants' Motion for Stay Pending Appeal** [47]. Upon consideration of Defendants' motion and of all materials submitted in relation thereto, it is hereby

**ORDERED** that Defendants' motion [47] is **GRANTED**; and it is further

**ORDERED** that the effect of this Court's Order of December 17, 2007 [45] be, and it hereby is, STAYED pending resolution of Defendants' appeal therefrom.

**SO ORDERED.**

**DATE: ______________________**

**ROYCE C. LAMBERTH**
**United States District Judge**