UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, et al.,<br><br>　　　　　　Defendants. | CIVIL ACTION NO.<br>1:06-cv-01912-RCL |

## NOTICE OF FILING

PLEASE TAKE NOTICE that the defendants, by their undersigned counsel, herewith file the Fifth Declaration of Paul S. Morrissey, Deputy Assistant Director, United States Secret Service, which supplements Mr. Morrissey's prior declarations in this case.

Dated: January 24, 2008

　　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　PETER D. KEISLER
　　　　　　　　　　　　　　　　　　　Assistant Attorney General

　　　　　　　　　　　　　　　　　　　JEFFREY A. TAYLOR
　　　　　　　　　　　　　　　　　　　United States Attorney

　　　　　　　　　　　　　　　　　　　ELIZABETH J. SHAPIRO, D.C. Bar 418925
　　　　　　　　　　　　　　　　　　　Assistant Director

　　　　　　　　　　　　　　　　　　　/s/ W. Scott Simpson

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　W. SCOTT SIMPSON, Va. Bar 27487
　　　　　　　　　　　　　　　　　　　Senior Trial Counsel

Attorneys, Department of Justice
Civil Division, Room 7210
Post Office Box 883
Washington, D.C. 20044
Telephone: (202) 514-3495
Facsimile: (202) 616-8470
E-mail: scott.simpson@usdoj.gov

COUNSEL FOR DEFENDANTS

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 1:06-cv-01912-RCL |
| U.S. DEPARTMENT OF HOMELAND SECURITY, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

**FIFTH DECLARATION OF PAUL S. MORRISSEY**
**DEPUTY ASSISTANT DIRECTOR**
**UNITED STATES SECRET SERVICE**

I, Paul S. Morrissey, hereby declare as follows:

1. I am the Deputy Assistant Director of the Office of Protective Operations ("OPO") for the United States Secret Service ("Secret Service"), which is a component of the Department of Homeland Security. I have held this position since September 2006, and have been a special agent with the Secret Service since January 1983. The statements made herein are based on my personal knowledge or on information made available to me in my official capacity.

2. This declaration supplements my prior declarations in this case. In my capacity as the Deputy Assistant Director of the OPO, I am making representations on behalf of the Secret Service as an Agency and not solely on behalf of the OPO.

**Numerical Clarification**

3. After execution of my fourth declaration in this case, the Secret Service realized that a minor clarification was needed in paragraph 30 of my third declaration.

4.  Paragraph 30 of my third declaration stated:

Apart from the above-described records of visitors, the Secret Service has records of public, self-guided tours of the White House that do not involve visiting any Presidential or Vice Presidential personnel. As of June 2006, approximately 48,400 persons participate in these tours each month. As a security measure, the Secret Service takes the names and other identifying information of persons who participate in such tours, but these records were not uniformly retained until early 2007. The Secret Service does not understand the subject FOIA request as applying to records of such tours.

5.  Tours of the White House are of two types: East Wing tours and West Wing tours. Paragraph 30 of my third declaration erroneously implied that the number stated in that paragraph encompassed participants in both types of tours.

6.  Any member of the public (subject to security clearance) may ask to participate in an East Wing tour, generally by contacting his or her Congressman or Senator. As of June 2006, approximately 48,400 persons participated in East Wing tours each month. The Secret Service determines this number, for statistical purposes, by counting names and checkmarks on large-event summaries that are printed from the Worker and Visitor Entrance System ("WAVES") to monitor the entrance of tour participants.

7.  Any member of the public (subject to security clearance) may also participate in a West Wing tour, but such a tour must be requested by a White House pass holder, who must accompany the participants during the tour. West Wing tours are generally permitted only on weekday evenings and on weekends. The Secret Service does not have information regarding the number of persons who participate in West Wing tours during a given month. Although participants in West Wing tours are processed through the WAVES system, the WAVES information does not indicate whether an individual was coming to the White House for a tour or for an

appointment, and the Secret Service does not otherwise tally the number of participants in West Wing tours.

### Additional Receipts Reflecting Turnover of WAVES Data

8. According to paragraph 18 of my third declaration, an employee of the White House Office of Records Management ("WHORM") typically signs a receipt upon the Secret Service's periodic turnover of a batch of WAVES records. A sample receipt form, dated January 27, 2006, was Exhibit A to that earlier declaration. The Secret Service has also located such receipts for a period during the prior Administration. Attached hereto, as Exhibit A, are two receipts reflecting the transfer of WAVES data to the WHORM in 1998.

### Other Records Searched

9. After execution of my prior declarations in this case, the Secret Service realized that certain additional categories of records — specifically, records originating from the EOP reflecting parking requests, or authorizations for parking, with respect to the White House Complex; White House Daily Briefing Sheets; and certain daily schedules of the First Lady — could contain records responsive to the Freedom of Information Act ("FOIA") request in this case, or could be construed as containing responsive records. With the authorization of the Executive Office of the President and (where necessary) the Office of the Vice President, the Secret Service has searched these additional categories of records for any of the nine names listed in the subject FOIA request. These searches included the period from January 1, 2001, through January 25, 2007, to the extent each type of record exists for that period. These searches produced no information concerning any of the nine individuals.

**Retention of Records**

10.    My third declaration in this case stated that the Secret Service periodically transfers newly-generated WAVES records on CD-ROM to the White House Office of Records Management, and that the Secret Service retains a copy of these records by keeping a copy of each CD-ROM transferred to the WHORM. Newly-generated Access Control Records ("ACRs") are also transferred to the WHORM, and retained by the Secret Service, on CD-ROM.[1] As noted in my third declaration, WAVES records on the White House Access Control System ("WHACS") servers which are more than 60 days old are purged daily and overwritten on the servers; ACR records on the servers are also purged on this schedule. I understand that there are over 500 electronic tables of raw data on the WHACS servers, some of which contain merely technical information that allows the system to operate. The ACR records on the CDs appear to be drawn from approximately nine of these tables, and the WAVES records on the CDs appear to be drawn from three out of the same nine tables. I have been advised that the Secret Service has been retaining all of the fields in these nine tables since May 26, 2006, in addition to the data on the agency's copies of the CD-ROMs provided to the WHORM (and the hard drives referred to in footnote 1). The fields transferred to the CD-ROMs include information such as the name, date of birth, and Social Security number of the visitor; the date and time of the visit; the visitor's destination within the White House Complex (for example, the location of a meeting); the name of the White House pass holder who scheduled the visit and when it was scheduled; the note and comment fields referred to in my third declaration; and other fields. However, it does not appear

---

[1] Additionally, some WAVES and ACR data/records are retained on the hard drives of two Secret Service computers, as described in paragraph 20 of my third declaration.

that all of the fields on all of the nine tables are transferred to the CD-ROMs. In order to enable the Secret Service to identify and assess the fields in all of the tables on the WHACS servers, and to determine their appropriate disposition under the Presidential Records Act or the Federal Records Act, the Secret Service will immediately issue written guidance to the appropriate offices to retain all of the tables on the WHACS servers pending that determination.

    I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 24, 2008.

                                                                        PAUL S. MORRISSEY



# DEPARTMENT OF THE TREASURY
## UNITED STATES SECRET SERVICE

June 5, 1998

TO : TERRY W. GOOD
DIRECTOR
WHITE HOUSE OFFICE OF RECORDS MANAGEMENT

FROM : LARRY L. COCKELL
SPECIAL AGENT IN CHARGE
PRESIDENTIAL PROTECTIVE DIVISION

SUBJECT : Transmittal of Archived WAVES Data – May 1998

Reference is made to my memorandum of May 20, 1998 detailing the transmittal of archived Waves data on CD-ROM and specifying the format of that data

This memorandum is to confirm your receipt of the WAVES data for May 1998. Accordingly, your office has received one CD-ROM's and four WAVES printouts, specifically:

VISITOR SUMMARY and;

WORKER, PRESS and ACCESS LIST ENTRIES.

If you have any questions you may contact ATSAIC Jeff Undercoffer or myself at 456-2443.

Received by: _____
Date: 6-5-98

Exhibit A



# DEPARTMENT OF THE TREASURY
## UNITED STATES SECRET SERVICE

May 20, 1998

TO : TERRY W. GOOD
DIRECTOR
WHITE HOUSE OFFICE OF RECORDS MANAGEMENT

FROM : LARRY L. COCKELL
SPECIAL AGENT IN CHARGE
WHITE HOUSE DIVISION

SUBJECT : <u>Transmittal of Archived WAVES Data – January, February, March and April 1998</u>

Reference is made to my memorandum of May 20, 1998 detailing the transmittal of archived Waves data on CD-ROM and specifying the revised format of that data.

Accordingly, in February 1998 you received one CD-ROM containing the archived WAVES data for the month of January, you did not receive the associated printouts for that month. This memorandum is to confirm your receipt of the WAVES printouts for January 1998 and three CD-ROM and associated printouts for the months of February, March, and April 1998.

Additionally, any correspondence directed to the WAVES section from the White House staff regarding additions and deletions to access lists is also included.

If you have any questions you may contact ATSAIC Jeff Undercoffer or myself at 456-2443.

Received by: *[signature: Terry W. Good]*
Date: May 21, 1998